## No. 2482.

### THE HOUSTON & TEXAS CENTRAL RAILWAY COMPANY
### *v.* LIZZIE LEE.

1. VERDICT.—The fact that the weight of evidence is against a verdict, will not of itself justify the reversal of a judgment based thereon, if there be evidence to sustain the verdict. It is only in cases where the verdict is manifestly wrong that the Supreme Court will disregard it on the ground that it is against the weight of evidence.
2. DAMAGES.—A young lady while a passenger on the coach of a railway company, was injured by the coach leaving a defective track on which the cross ties were rotten, and when the train was going at a speed more rapid than usual. She was for a time rendered unconscious; her ribs were broken, her spine injured, her health impaired, and thereafter at intervals of six weeks, she suffered pains such as a woman has in child birth. *Held*, that a verdict against the railway company for six thousand nine hundred and thirty-three dollars was not excessive.
3. SAME.—A passenger on a railway car who is injured by reason of the malicious act of one not in the employ of the railway company, whereby the car was derailed, can not recover for the damage inflicted.

ERROR from Brazos. Tried below before the Hon. Norman G. Kittrell.

*O. T. Holt,* for plaintiff in error:  That the rate of speed at which a train is moving is not of itself negligence, he cited 13 Ohio State, 67; 71 Illinois, 640; 27 Vermont, 49; 40 Iowa, 47; 40 Iowa, 205; 46 Massachusetts, 574; 4 Harrington, Delaware, 252; 16 Illinois, 189; 12 Kansas, 328; 84 Illinois, 397; 38 Iowa, 250; 6 American and English Railway Cases, 84; 8 American and English Railway Cases, 467; 11 American and English Railway Cases, 460; 13 American and English Railway Cases, 507; 12 American and English Railway Cases, 446; 19 American and English Railway Cases, 273; Morris v. Railway Company, 26 Federal Reporter, 31.

That where a train is thrown from the track by some malicious persons, unknown to the company, by removing the nuts, bolts, spikes and angle plates from the crossties and rails, or in any way obstructing the track, the company is not responsible for such accident, he cited International & Great Northern Railway Company v. Halloran, 53 Texas, 46; Hutchinson on Carriers, secs. 27, 28, 525; Rorer on Railroads, 1067; Thompson on Carrier of Passengers, 188; Hutchinson on Carriers, 504; Cooley on Torts, 663; Wharton on Negligence, 661; John Day v. New York Central Railway Company, 34 New York, 9; Stephen McPadden v. The New York Central Railway Company, 44 New York, 478; Edgerton v. New York and Hudson River Railway Company, 39 New York, 227; Curtis v. Rochester Railway Company, 18 New York, 534; Baltimore and Ohio Railway Company v. Wightman, 29 Grattan, 480; Nell v. Pennsylvania Railway, 64 Pennsylvania State, 230.

*Spencer Ford,* for defendant in error:  That proof by plaintiff of the accident and the attending circumstances, and the consequent injuries received, raises a legal presumption of negligence on the part of defendant, and establishes prima facie its liability to her, and casts upon the defendant the onus of disproving negligence, he cited Thompson on Carrier of Passengers, 210; Cooley on Torts, 662–3; Shearman & Redfield on Law of Negligence, 12, 13; 2 Wait's Actions and Defenses, 91; Thompson on Negligence, 45; Union Railway Company v. Shechlet, 10 Southeastern Reporter, 898–9.

GAINES, ASSOCIATE JUSTICE.  This suit was brought in the court below by defendant in error against plaintiff in error to recover damages for personal injuries alleged to have occurred

to her by the derailment of a coach upon the company's rail-
road, upon which she was traveling as a passenger. The third
and fifth are the only assignments of error relied upon in the
brief of the plaintiff in error. Taking them in inverse order,
they are as follows:

5. "Because the verdict of the jury is contrary to the law
and evidence in this: That all the evidence shows that the acci-
dent was caused by some malicious person removing the taps,
nuts, bolts and spikes from the rails, and that these acts and
doings threw the train from the track."

3. "Because the verdict of the jury is grossly excessive, in
this: It was shown that immediately after the accident, the
plaintiff, Lizzie Lee, was attending parties or dances in the
neighborhood in which she lived, and participated in all dances,
and remained at some as late as one o'clock a. m."

An outline of the evidence bearing upon the fifth assignment,
is as follows: The plaintiff proved that she was a passenger on
the regular passenger train of the defendant company which
went north from Houston on the night of the thirteenth of
November, 1884, and that she had purchased a ticket; that just
before reaching Clear creek, about two miles south of Hemp-
stead, six of the cars left the track, and that upon which she
was traveling was thrown down the embankment, whereby she
received serious personal injuries. Testimony was also intro-
duced by her in chief tending to show that at the time the
accident occurred the train was running at a high rate of speed,
and that at the point where the cars were thrown from the
track, the ties were rotten and the road bed in an unsafe con-
dition. The defendant, on the other hand, introduced witnesses
who swore that its road bed at the place of the accident was in
a safe condition; that the ties were sound and laid with first
class heavy steel rails, and that its employes in charge of the
train, were careful and competent men. Several witnesses,
some of whom were employes, and were passengers on the
train, also testified that the train was not running dangerously
fast. There was also evidence tending to show by the time
which had been consumed in running from Houston and in-
termediate stations to the place of the accident, that the rate of
speed was but little if any, in excess of schedule time of trains
making that trip. The cars left the track on the right side, and
the first rails which were displaced, counting from the south,
were carried down the embankment by the rear coaches and

were found under them.  The rail immediately in rear of the first that was detached remained in its place.    The witnesses swore that there was no signs of violence upon it at the point of disconnection.    There were nuts · and bolts found near the joint which bore no signs of having been torn assunder by force.  An angular plate was found down the embankment which was not warped or bent and had fresh rust upon one side of it.   Defendant's witnesses also testified that the spike holes in the cross ties from which the rails were displaced were not enlarged, as they would have been had the spikes been wrenched out by the rail, but appeared as if the spikes had been drawn by a crow bar.   It was also testified that spikes were found there which had the marks of this implement upon them.  The section foreman testified, that shortly after he got to the wreck with his hand car which was within an hour or two after the accident, he went to it for his claw bar and wrench, and that they were missing.   He also swore that he left them on their car at the section house, one and a quarter miles distant, the evening before, and that they had never since been seen by him.   He was corroborated as to these matters by one of his section men.

In rebuttal plaintiff introduced witnesses who testified, that at and before the accident the cars were running at a very high rate of speed, so much so as to cause a remark among the passengers and to greatly alarm at least one of them.  Other witnesses swore that many of the cross ties where the cars left the track were rotten, and that, though they attempted to make a fire out of them they would not burn.   It was also testified that spikes were pulled from the crossties with the hand; and one witness swore that he forced a spike into a tie with his hand alone to the depth of three or four inches.

As to the condition of the ties and the rate of speed, a large number of witnesses were examined on both sides, and their evidence was very conflicting.   Upon the other points there was no important conflict in the evidence.  It is sufficient to say, however, that notwithstanding the conflict, there was ample testimony to sustain the verdict of the jury upon the questions of the safety of the road bed and the rate of speed; and the verdict can not be set aside, unless the defendant has shown that the accident was caused by the malicious act of some third person.   It must be conceded that upon this point it has made a strong case.   If the nuts, bolts and bars were those used to connect the rails where they were detached, it is difficult to account

for their appearance upon any other hypothesis, except that they were removed by direct human agency. But that they were the same irons used to secure the joint may be doubted. The defendant failed to show satisfactorily any motive on the part of any person to do the act. Such outrages are sometimes perpetrated, but their occurrence is so rare as not to be presumed from any doubtful circumstances. Upon this point the defendant company had no direct evidence whatever. No one was seen to remove the bolts or spikes, or was known to be about the place at the time it is claimed that the joint was disconnected.

It is not necessary for us to say what our conclusion would be as to the facts if called to pass upon them in the first instance. Where there is not sufficient evidence to sustain a verdict, this court will reverse the judgment; but if there be sufficient evidence, it can not interfere merely because we think the weight· of the affirming testimony is against it. It is only when the verdict appears clearly wrong that this court can set it aside upon the sole ground that it is against the weight of the evidence. The verdict in this case is not clearly wrong, and therefore the fifth assignment of error is not well taken.

We are also of the opinion that the damages are not excessive. It is true that some four months after the accident the plaintiff attended parties and danced; but she testified that she found, after two or three experiments in this way, she suffered so much in consequence that she had been compelled to desist altogether. There was evidence to show that when the car was hurled down the embankment she was stunned and rendered unconscious, and that her ribs were broken and her spine injured. She was under medical treatment for many weeks, and though she has been able to go about, she has never been restored to health. Before her injuries she assisted her father in the field, picking cotton and hoeing, and did house work and washing. Since, she had been able to do no work. There was evidence tending to show that she was injured internally, and that a uterine trouble was produced. It was shown that she suffered at intervals of about six weeks pains resembling those of child birth, and that at such times her limbs became swollen. These attacks continued to return until the time of the trial. The company sent a physician in their employment to examine into her injuries. She answered freely all his questions and submitted to a personal examination as far as modesty would permit. He was placed upon the stand by defendant, but was not examined

concerning the extent of her injuries. When asked his opinion out of court by counsel by plaintiff, he declined to answer their questions. It was the peculiar province of the jury to assess the damages; and such being the evidence, we can not say that a verdict for six thousand nine hundred and thirty-three dollars was excessive.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered January 31, 1888.