FT. WORTH & D. C. RY. CO. v. MATCHETT.

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 14, 1912. Rehearing Denied Jan. 18, 1913.)

1. CARRIERS (§ 318*)—CARRIAGE OF PASSENGERS—INJURY—ACTIONS—EVIDENCE.

In an action by a passenger for personal injuries received in a derailment, evidence *held* sufficient to authorize a finding that the derailment was caused by the railroad company's negligence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. § 318.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

2. TRIAL (§ 252*)—INSTRUCTIONS—APPLICA-
BILITY TO EVIDENCE.

In an action by a passenger for injuries received in a derailment, which was caused by a loosened rail, where there was a mere suspicion that robbers caused the wreck, a requested charge that, if the rail was not loosened by any one then working for the railroad company, then it was not liable was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

3. TRIAL (§ 260*)—INSTRUCTIONS — REFUSAL OF INSTRUCTION COVERED BY THOSE GIVEN.

Where the court charged that if the railroad company or its servants were not guilty of negligence, or if the derailment was caused by the displacement of a rail by wanton persons, then the company was not liable, the refusal of a charge that, if the rail was loosened by persons not then working for the railroad company, then it was not liable was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

4. WITNESSES (§ 414*)—CORROBORATION—EVI-
DENCE.

In an action against a railroad company by a passenger for personal injuries received in a derailment caused by a loosened rail, the company's section foreman, who was impeached by proof of inconsistent declarations that, if he had had men enough, the accident would not have happened, cannot be corroborated by contrary declarations made at a time when he and his fellow workmen had been carried to jail by the peace officers upon a criminal charge in connection with the wreck of the train; the motive for such exculpatory declarations being obvious.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1287, 1288; Dec. Dig. § 414.*]

5. WITNESSES (§ 374*)—IMPEACHMENT—EVI-
DENCE OF INTEREST.

In a personal injury action by a passenger against a railroad company, proof that the company's doctor advised a compromise in settlement is admissible to show his bias and interest.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1201, 1202; Dec. Dig. § 374.*]

6. CARRIERS (§ 320*)—CARRIAGE OF PASSEN-
GERS—INJURIES—ACTIONS—EVIDENCE.

In an action against a railroad company for personal injuries received by a passenger in a derailment caused by a loosened rail, held that the question of the negligence of the company's employés in failing to discover the misplaced rail was, under the evidence, properly submitted to the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. § 320.*]

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Leila Matchett, by her next friend, against the Ft. Worth & Denver City Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Spoonts, Thompson & Barwise, of Ft. Worth, and C. C. Huff, of Wichita Falls, for appellant. Mathis & Kay, of Wichita Falls, for appellee.

SPEER, J. T. D. Matchett, as next friend to Leila Matchett, his minor daughter, brought this suit against the Ft. Worth & Denver City Railway Company to recover damages for personal injuries, and a trial before a jury resulted in a verdict and judgment against the defendant in the sum of $7,000, from which the company has appealed.

The accident resulting in the injuries to appellee was caused by the derailment of a north-bound passenger train. After the wreck occurred, it was found on examination of the track that the bolts holding in place the angle bars at a joint between two rails had been taken out, the angle bars removed, and the spikes on the inside of the rail at the disconnected joint had been drawn from the ties for a considerable space and the rail misplaced, thus making a derail in the track. It was the contention of the plaintiff that this condition was the result of the defendant's negligence, while, on the other hand, it was the theory of the defendant that some malicious person had thus attempted to wreck the train.

[1] Appellant's first assignment of error is to the effect that the court erred in permitting the jury to find for the plaintiff upon the theory that such condition of the track was due to negligence on the part of appellant's employés; the contention being that there was no testimony before the jury to justify such a finding. While there is much testimony of a negative kind, and while the question is not altogether free from obscurity, nevertheless we cannot say there is no evidence in the record from which the jury would be authorized to find that the condition of the track above described was due to the negligence of appellant's employés. The evidence shows that the nuts with which the bolts securing the angle bars were held in position were what is known as safety nuts and were not easily removed like ordinary nuts, but required the application of considerable force, even to the last turn. The fact that these nuts and bolts were carefully removed and neatly piled on each side of the rail, some of the nuts being screwed back onto the bolts, and the fact that the angle bars bore no signs of having been violently broken, indicate with reasonable certainty, what no one in the present case denies, that the condition of the track was the result of human agency. A claw bar, such as is commonly used by section men for pulling spikes from ties, was found near the rail joint in question. It was shown that appellant's section men had done some track work at this particular place only about a week before the accident. It was also shown that on the night of the accident, and only a short while before it occurred, the section men, under their foreman, Colvin, had been out doing some work on the track and had twice passed this particular place. We cannot say that reasonable minds could not dif-

fer in the conclusions to be drawn from these circumstances, but believe the evidence to be such as not only to justify the submission of the issue, but to support the verdict based thereon.

[2] Appellant next complains of the trial court's refusal to give the following special charge: "You are further instructed, as to the law of this case at the request of the defendant, that if you find and believe from the testimony that the disconnected joint between the two rails, which has been referred to in the testimony before you, was disconnected at the time train No. 5 reached that place on the night of the 29th of October, and if you further believe from the testimony that it was not so disconnected by any person or persons who, at the time of doing this, were working for the defendant railway company, but was so disconnected by some person or persons not then working for the defendant company, then and in that event you are charged that the defendant would not be liable for such disconnecting of the joint." There is nothing in the evidence to call for the giving of this charge. It is a mere suspicion that vandals or robbers caused the wreck, and besides the charge would probably have been misleading in excluding, from the consideration of the jury, appellant's contention that appellant's servants operating the train were negligent in not discovering the condition of the track in time to avoid the accident.

[3] Moreover, the trial court gave appellant the full benefit of this defense in the following language: "If, however, you believe from the evidence that the defendant company or its employés were not guilty of negligence, as that term is herein defined, or if you believe that the derailment was caused by the displacement of a rail at the place of derailment, and you believe that such act was done by some wanton person or persons not connected with the railway company, then you will find for the defendant, unless you further find and believe that the failure of the defendant's employés to discover such displacement of the rail in time to prevent such derailment was negligence, as that term has been defined to you."

[4] Perhaps the most difficult question involved on the appeal is presented in the court's ruling in excluding the testimony of the witness Schwend as to declarations made to him by appellant's section foreman and witness, Tom Colvin. On cross-examination of this witness he was asked if he had not stated to Tom Pickett, constable of the precinct, and to others, that the reason this wreck occurred was because he did not have men enough—"If he had had men enough, the thing never would have happened." Upon his denial, the persons referred to in the interrogatories were placed upon the stand and contradicted him in this respect; counsel for appellee stating at the time that the testimony was offered for the purpose of impeaching the witness Colvin. Later appellant offered the witness Harrison Schwend and proposed to prove by him that he had a conversation with Colvin in which Colvin stated to him, in substance, that he was not at the place where the wreck in question happened on the night of the wreck and prior thereto, except to pass over that place, together with his men, in his hand car; in short, that Colvin then repeated to the witness, in substance, what he had testified to on the trial of the case. The court sustained objections to this testimony and excluded it, and appellant now insists that in doing so the court erred in that the testimony should have been admitted in corroboration of the impeached witness. There appears to be some little confusion in the authorities upon this point, but the true rule in this state appears to be laid down in Ætna Ins. Co. v. Eastman, 95 Tex. 34, 64 S. W. 863, as follows: "Whenever a witness is sought to be impeached by showing that he has made declarations inconsistent with the testimony given by him upon the trial, and the tendency of such impeaching evidence is to show that the testimony of the witness is, by reason of some motive existing at the time of the trial or of some influence then operating upon him, fabricated, it is proper to admit evidence of his former declarations which corroborate his testimony, provided such declarations were made at the time when no such motive or influence existed." The witness Colvin at the time of the accident, of course, and at the time he made the statements to Schwend, was an employé of the appellant company, but whether this fact alone would furnish such motive as to exclude the statements under the above rule we need not decide. The case of M. K. & T. Ry. Co. v. Sharp, 120 S. W. 263, appears to involve the exact question, but does not discuss it. There does appear to us, however, the existence of such a motive as justifies the trial court in excluding the statement. At the time it was made, the witness Colvin was at the jail, to which he and some of his fellow section workmen had been carried by the peace officers of the county upon a criminal charge in connection with the wrecking of the train. Whether the witness was accused of causing the wreck, either through malice or negligence there undoubtedly existed a sufficient motive probably to induce the statement to Schwend in keeping with his testimony on the stand, which tended to exonerate the witness himself from all blame in the transaction. The trial court, therefore, committed no error in excluding the evidence.

[5] Neither was there error in permitting the appellee to prove on cross-examination of Dr. Walker, the company's local surgeon, that, in discussing appellee's case with her and her mother, he had advised a compromise and settlement. This was proper as showing the bias of the witness and his

interest in the case. Tex. & N. O. Ry. Co. v. Scott, 30 Tex. Civ. App. 496, 71 S. W. 26. Furthermore, Mrs. Matchett testified substantially to the same thing, and no request was made to limit the testimony of either witness, nor is there any complaint here of the admission of Mrs. Matchett's testimony.

[6] The complaint that there was error in submitting as a ground of liability the negligence of appellant's employés in failing to discover the misplaced rail in time to avoid the accident is without merit. In view of the evidence already detailed, and in view of the fact that at the point of accident the track is shown to be straight and exposed to view for a very considerable distance, and the further fact that the impact of the car wheels on the ties would justify the inference that the rail was out of position when the engine struck it, would justify submitting to the jury to find whether or not the company's servants, operating the train in the exercise of that high degree of care required of them, should not have discovered the condition of the track in time to avoid the accident. Besides, the fireman on the engine, at the time of the occurrence, was not called as a witness, nor is his absence accounted for. The engineer was killed. We find the evidence justifies the verdict both as to liability and amount of recovery.

The judgment of the district court is in all things affirmed.