St. Louis, Iron Mountain & Southern Railway Company v. Thurman.

Opinion delivered November 17, 1913.

1. Railroads—injury to passenger—condition of track—evidence.—In an action against a railroad company for damages caused by the wreck of a train, where it is contended that the wreck was due to the defective condition of the track, evidence is admissible of the condition of the track before and at a time five months after the accident, in order to show the condition of the track at the time the accident occurred. (Page 194.)

2.  INSTRUCTIONS—INVITED ERROR.—Appellant can not complain of an erroneous instruction given at the instance of the appellee, when the same error was repeated in an instruction asked by it. (Page 195.)

3.  CHANGE OF VENUE—DISCRETION OF COURT.—*St. Louis, I. M. & S. Ry. Co.* v. *Reilly,* 110 Ark. 182, cited and approved. (Page 196.)

4.  TRIAL—REMARKS OF TRIAL JUDGE.—It is proper for the trial judge to caution the jury to try the cause before them according to the law and the evidence, and not to be influenced by an article which appeared in a local newspaper. (Page 196.)

Appeal from Franklin Circuit Court, Ozark District; *Jeptha H. Evans,* Judge; affirmed.

*Thos. B. Pryor,* for appellant.

1.   The court should have directed a verdict for the defendant. The evidence going to prove that there were obstructions upon the track which derailed the train can not be controverted, and the presumption of negligence arising from the fact of the derailment was overcome by this clear, positive and uncontroverted proof. There was no evidence tending to show any defects of any character in the engine or train, but, on the contrary, the evidence did show that the train and equipment were in first-class condition. 96 Ark. 37.

Railroad companies are not insurers of the lives and safety of their passengers. 99 Ark. 368; 60 Ark. 550; 57 Ark. 287; 55 Ark. 248; 52 Ark. 517-524; 157 Pa. 103; 34 N. Y. 9, 88 Am. Dec. 418; 92 Ga. 187; 56 Pa. 294.

2.   It was error to permit the witness, Adams, to testify as to the condition of the track just three days before the trial of the case, and six months after the accident occurred, and after the conditions of the track had been changed. 48 Ark. 473; 69 Me. 174; 38 Mich. 341.

3.   Instruction 10, given at appellee's request, based presumably upon the lookout statute, has neither any allegation of the complaint, nor any evidence, to support it. It constitutes reversible error. 70 Ark. 443; 85 Ark. 394; 77 Ark. 567; 88 Ark. 25, 26.

4.   The court erred in not granting the petition for change of venue. The act approved May 13, 1909, to

which the court referred, does not change the law. See Kirby's Dig., § 7998. It is still left a matter of discretion with the court as to whether the change of venue in any case shall be granted. Appellant more than complied with the act, having twelve credible witnesses supporting its petition.

The court's statement that these witnesses "did not understand the nature of their actions in this respect," is not based upon any evidence before the court; and the court manifestly erred in stating that it was not a matter within his discretion. 74 Ark. 173.

*Sam R. Chew, Bratton & Frazier,* and *Frank Pace,* for appellee.

1. The court properly refused to direct a verdict for the defendant, there being conflicting evidence which it was the province of the jury to settle. And their verdict rendered upon conflicting evidence will not be disturbed on appeal. 73 Ark. 337; 75 Ark. 111; 67 Ark. 531; *Id.* 433.

On the proposition as to the degree of care to be exercised by a railroad company in the operation of trains, and in the maintenance of tracks and train equipment, the court instructed the jury, in accordance with the well-established rule laid down by this court in the *Purifoy* case, 99 Ark. 368, and other cases.

2. There was no error in admitting the testimony of Adams as to the condition of the track just before the trial, taken in connection with the statement of the court to the jury explaining why it was admitted. 48 Ark. 474.

Appellant attempted to prove the condition of the track from the year 1910 down to Saturday before the trial of the case, and is in no position to complain of Adams's testimony, even if it was incompetent. 75 Ark. 251. See also 76 Ark. 276; 66 Ark. 292; 97 Ark. 109.

3. A party will not be heard to complain of a certain instruction where he himself has requested an instruction upon the same matter. 67 Ark. 531; 95 Ark. 541; *Id.* 209; 81 Ark. 579; 69 Ark. 140; 59 Ark. 317; 88 Ark. 175; 94 Ark. 528.

4. There was no error in overruling the petition for change of venue. Act May 13, 1909; 74 Ark. 172, 173; 106 Ark. 530; 5 Ark. 208; 10 Ark. 428; 36 Ark. 316.

WOOD, J.   While appellee was a passenger on appellant's train running from Little Rock to Coffeyville, Kansas, the car in which he was riding was derailed and overturned, causing appellee serious bodily injuries, damages for which he seeks to recover in this action. He alleged that appellant carelessly and negligently ran its train at an unusual and unsafe rate of speed, considering the condition of the track at the place where the injury occurred. That it negligently and carelessly constructed and maintained its roadbed and track at the place where the injury occurred, and carelessly and negligently constructed and maintained its engine and cars all in such manner as to cause the derailment of the train, and thereby produce the injury of which he complains.

The appellant denied all the material allegations of the complaint. A motion for a change of venue was made and overruled by the court.

The verdict and judgment were in the sum of $15,-000. The amount of the verdict is not challenged here.

The undisputed evidence showed that appellee was injured while a passenger upon appellant's train by reason of the derailment and overturning of the car in which appellee was riding. Appellant adduced evidence, which it is unnecessary to set out in detail, tending to show that the tracks where the injury occurred were in perfect condition, and that its engine and cars were in perfect condition. In other words, the testimony on behalf of appellant tended to rebut the charges of negligence set up in the appellee's complaint, and to overturn the presumption of negligence arising from the injury caused by the running of appellant's train.

Appellant undertook to show that the injury was caused by obstructions placed upon its track by two small boys. Its porter, who was riding on the cowcatcher, testified that immediately before reaching the point of derailment, his attention was attracted to some rocks that

were upon the rail; that he looked ahead and saw some iron bolts and some nuts upon the rails and between the joints of the rails; that as soon as the front wheels of the engine struck the bolts, that it caused the wheels to derail.

The engineer testified that he "discovered things on the rails on each side. They looked to him about the size of these little snowbirds sitting on the track." He was keeping a lookout. He supposed that these things caused the engine to derail.

Witness testified, without objection, that the engineer, while crawling out from under the engine just after the wreck occurred, stated that there was something on the track that threw him off.

There was other testimony tending to show that the train was derailed by reason of small nuts and bolts being placed on the track. Witnesses testified that if the track was in perfect condition, then these nuts and bolts placed on the rail were calculated to derail the train. They examined certain spikes and nuts, and the bright scars and marks on them that indicated conclusively that they had been mashed by the cars.

The train dispatcher's records were introduced, showing that seven trains had passed over the track on the day of the derailment prior to the wrecked train. One of these passed three hours before the wreck occurred. The engineers of these trains testified that the track was in first-class condition.

In addition to this testimony, the appellant introduced evidence showing that John Escue and John Johnson, two small boys, had been indicted by the grand jury of Crawford County for the crime of wrecking this train, and that these boys, on a preliminary hearing before a justice of the peace on said charge, had admitted placing these obstructions upon the rail. Other witnesses testified that they had heard these boys admit that they had placed the obstructions upon the track which derailed the train.

On the other hand, the appellee introduced testimony tending to show that the track, at the place where the in-

jury occurred, at the time of such injury, was out of repair. The testimony of several witnesses tended to show that at the place where the wheels first left the rails, there were rotten ties, five or six in number. The indications on the ties showed that the rails had spread. The rails had sagged down into the ties and cut outward from the tracks in such manner as to show that they had spread.

The track at the place was examined, both at the time of the wreck and some time afterward, by witnesses who testified that a large portion of the ties were so rotten that they would not hold a spike. From the place where the train first left the track to the yard limit board, witnesses had pulled from twenty-five to fifty spikes out of the ties with their fingers. In some of the ties there were no spikes at all. In most of the ties, the spikes were not driven down to the rail, but were up an inch or more from the rail, and not binding same firmly. Some of the ties that were in the track at the time when, and at the place where, the wreck occurred, were gathered up, and were exhibited to the jury in evidence.

The boys that were accused of having placed the obstructions on the track were witnesses, and denied having anything to do with wrecking the train; and they showed that their confessions and statements were caused by threats and inducements held out to them by one Cathey Pitcock, which they detailed. There was also testimony tending to corroborate the testimony of these boys, showing that they were not on the track at the time when the train was wrecked, and that they had nothing to do with wrecking the same.

The appellant contends that the court should have directed a verdict in its favor upon the undisputed evidence, but the question of appellant's negligence was for the jury, and the court did not err in refusing its prayer for a directed verdict.

The appellant urges that the court erred in admitting the testimony of a witness as to the condition of the track a few days before the trial, showing that same was

in bad condition at that time. The trial was had on the 26th of February, 1913. The wreck occurred September 26, 1912. The court, in ruling on the objection, stated that the testimony would be admitted "only for the purpose of enabling the jury to arrive at the condition of the track immediately before and after the derailment." The court, in admitting other testimony as to the condition of the track two or three weeks after the wreck, stated that he admitted the testimony showing the condition of the track before the time, and after the time the wreck occurred, for the purpose of enabling the jury to determine what the condition of the track was at the time of the wreck, and for no other purpose whatever.

There was other testimony tending to show that the track was in the same condition at the time of the wreck as it was in when visited by witness, Adams, five months subsequent to the wreck; that these conditions had continued from the time of the wreck except for the new ties that had been put in the track immediately after the wreck.

In *Little Rock & Fort Smith Ry.* v. *Eubanks,* 48 Ark. 460-474, we held that, "Where a defective track is alleged to be the cause of the casualty, it is often impracticable to adduce evidence as to the condition of the track at the precise moment the casualty occurs. It is enough to prove such a state of facts shortly before or after, as will induce a reasonable presumption that the condition is unchanged." See also *St Louis, I. M. & S. Ry. Co.* v. *Freeman,* 89 Ark. 331. The testimony, under the above rule, was competent.

Other testimony than the testimony objected to tended to prove that the same condition testified to by the witness had existed from the time of the casualty, and it would be unreasonable to conclude that railroad ties that were in first-class condition at the time the wreck occurred, could deteriorate so rapidly as to be rotten within five months thereafter. It might be said, as a matter of common knowledge, that such is not the nature of railroad ties. It would take longer than five months

for the disintegration of the timber out of which railroad ties are made.

Appellant bases certain assignments of error upon the rulings of the court in granting and refusing prayers for instructions. Among these, the most important is the granting of appellee's prayer No. 10, which, in effect, told the jury that, even if they found the roadbed, track and engine in perfect condition, yet, if the engineer could, by the exercise of proper care, have seen the obstructions ahead in time to have stopped the train, they might find for the plaintiff. No issue was raised in the pleadings based upon a failure to keep the lookout required by statute, and the undisputed evidence showed that the proper lookout was kept. Therefore, the above instruction should not have been given, as it "was calculated to confuse the jury and divert their minds from the real issue." *Railway Co.* v. *Woodward,* 70 Ark. 443. "It is error to submit as issues to the jury matters about which there is no dispute." *El Dorado & Bastrop Ry. Co.* v. *Whatley,* 88 Ark. 20, and cases cited. But appellant asked, and the court gave, the following: "If you find from the evidence that the track at the point where the derailment occurred was in good condition immediately before the derailment, and that the engine was in good condition, and was being operated in a careful manner, reasonably consistent with the mode of operation of trains, and that said train was caused to be derailed on account of iron bolts, nuts or other obstructions being placed upon the track by a stranger, then your verdict should be for defendant." Appellant can not complain of the instruction given at the instance of appellee, since the same error was repeated in an instruction asked by it. *St. Louis, I. M. & S. Ry. Co.* v. *Lamb,* 95 Ark. 209; *Chicago, R. I. & P. Ry. Co.* v. *Smith,* 94 Ark. 524; *Lindsey* v. *St. Louis, I. M. & S. Ry. Co.,* 95 Ark. 541; *Little Rock & M. Ry. Co.* v. *Russell,* 88 Ark. 175; *Choctaw, O. & G. Rd. Co.* v. *Hickey,* 81 Ark. 579.

We have carefully examined the other assignments of error as to the granting and refusing prayers for in-

structions, and find that such of the refused prayers as were correct, the court covered in other instructions, given both at the instance of appellant and appellee. There was no error in any of the other instructions given, and the record upon the whole is free from prejudicial error in the rulings of the court upon the instructions.

The assignment of error in the refusal of the court to order a change of venue is based upon the same facts as in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Reilly,* 110 Ark. 182, and that case on this point rules this.

Just before reading the instructions to the jury, the court made the following remarks:

"Gentlemen of the Jury: Counsel for the plaintiff have called my attention to an article which appeared in one of the town papers this week, in regard to the trial of cases which are brought in counties other than the counties where the injuries occurred, and they want to know whether the jurors have read the article or articles, and, if so, they want the court to instruct you that you will not be governed by anything except the law and evidence, if you should have read the article.

"It is a lawful right that a party has to bring his suit here, and when he brings it here, he is entitled to have it tried by the law and the evidence exactly like he would if he lived in the county, and in no other way.

"We are assembled here for the purpose of trying cases according to the law and the evidence, and no extraneous or outside matter should be allowed to influence the judge or jurors, or any person connected with the administration of the law, to do other than the law and evidence require in the case."

The court informed the jury as to the purport of the newspaper article, and cautioned them not to allow any "extraneous or outside matter" to influence their verdict. The remarks, under the circumstances developed, were proper. They were cautionary, and were intended, and their effect could only have been, to hold the jury to a consideration only of the law and evidence of the case

in hand, and to free them of any possible prejudice from outside sources.

Finding no reversible error in the record, the judgment must be affirmed, and it is so ordered.