Southwestern Gas & Electric Company *v.* May.

4-3682

Opinion delivered February 4, 1935.

*Jeff Duty, Jno. R. Duty* and *Claude Duty,* for appellant.

*Earl Blansett, George Blansett* and *W. Maurice Buttram,* for appellee.

Butler, J. Tom May, the appellee, was injured by falling from a stepladder. He brought suit against the appellant company on the theory that its negligence occasioned the fall, and recovered judgment. This judgment is challenged on a number of grounds, but chiefly on the ground that the court erred in not directing a verdict in favor of appellant as requested by it.

According to settled rules, in testing the sufficiency of the evidence to sustain a verdict we view it in the light most favorable to the successful party, giving it its strongest value and indulging in all inferences favorable to the verdict which may reasonably be drawn from the evidence. When thus viewed, it may be stated as follows:

Appellee operated a filling station in which electrical appliances were installed in the operation of which he

had been experiencing some trouble and which, as he thought, occasioned the use of an unnecessary amount of electric energy, and a consequent raising in the charges he had to pay to the company for its use. He had endeavored to have his troubles rectified by applying to local agents of the company, but without success. Just before his injury he visited the division manager of the company, who advised him that if he, himself, would read the meter, he could determine whether or not there was anything wrong, and he was instructed by the division manager how to read the same.

Appellee returned to his place of business and attempted to read the meter which was located under the roof on the outside of the building, and approximately nine feet above the pavement. In order to reach it, appellee placed a stepladder just below it, ascended the ladder and knelt upon a board which constituted the top of the stepladder. He had with him a piece of paper and a pencil for the purpose of inscribing the figures as they appeared on the meter. As he knelt down with the pencil and paper in his hands preparing to write the figures, he fell from the top of the ladder to the pavement below. After stating that he had gotten down on his knees with the pencil and paper in hand preparing to write, in answer to a question as to whether or not he had seen a flash coming out of the meter or whether or not he had taken hold of the same or the wires, he stated that he did not see anything, and did not take hold of either the meter or the wire.

A witness who was holding the ladder at the time of the accident, and another who witnessed the occurrence testified that they saw appellee ascend the ladder, kneel upon its top, did not see appellee place his hands upon the meter or the wires. One said: "My impression is that when he got up on top of the ladder he kind of raised his hands up. I don't know just how he tumbled off." The other witness, appellee's son-in-law, said: "I don't know what caused him to fall. He was reading the meter. I don't know whether he put his hands on the meter or about the meter. He was knocked off or fell off."

The court permitted a Mr. Cunningham to testify on behalf of the appellee over the objection and exceptions of the appellant, that, as he was passing appellee's place of business after the accident, and on a date which witness did not remember, but which he assumed was probably two or three months after appellee's fall, he looked at the wires entering the meter as he was standing on the pavement below; that they appeared to have been too hot or overloaded or heated. He explained that he judged this to be the case because of the appearance of the wires which looked as if rain drops had fallen on them; that this would be caused by the wires becoming overheated because of overloading the capacity of the wires. There was no evidence to show that the condition of the wires when observed by Cunningham was the same as when appellee's accident occurred. This testimony was therefore incompetent. *Little Rock & F. S. R. Co.* v. *Eubanks*, 48 Ark. 460, 3 S. W. 808, 13 Am. St. Rep. 245; *St. L. I. M. & S. R. Co.* v. *Thurman,* 110 Ark. 188, 161 S. W. 1054. The undisputed evidence is also to the effect that the capacity of the wires was 220 volts; that there was a ground wire between the building and the transformer which "stepped down" the current rendering it impossible for a current in excess of 220 volts to enter the meter.

If we give effect to the incompetent evidence of Cunningham and assume that the wires were exposed so as to shock a person coming in contact therewith, there is no evidence which tends to show that appellee's hands came in contact with them, or that his fall was occasioned by a shock of electricity which caused him to lose his balance. Why he fell from the stepladder is purely a matter of conjecture. The most probable inference to be drawn from the evidence is that he lost his balance because he was attempting to write while kneeling upon the narrow platform at the top of the ladder, and in no view of the evidence can it be said that an inference arises making it more probable that he fell from some other cause.

The verdict of the jury was without substantial evidence, to support it, and clearly appears to be the result

of speculation. Verdicts based on speculation have been banned many times. Among the cases so holding are the following: *Texas Company* v. *Jones,* 174 Ark. 905, 298 S. W. 342; *St. Louis, etc., Ry. Co.* v. *Smith,* 179 Ark. 1015, 19 S. W. (2d) 1102; *St. Louis, S. F. R. Co.* v. *Bishop,* 182 Ark. 763, 33 S. W. (2d) 383.

The judgment of the trial court is therefore reversed, and the case is dismissed.