191 So. 225

## POLLARD v. WILLIAMS.

### 6 Div. 403.

Supreme Court of Alabama.

June 15, 1939.

Rehearing Denied Oct. 12, 1939.

W. H. Sadler, Jr., and E. L. All, both of Birmingham, for appellant.

Taylor & Higgins, of Birmingham, for appellee.

BOULDIN, Justice.

Action by passenger on a railway train for personal injuries sustained through derailment of the coach upon which she was a passenger.

The governing principles of law in such case have been frequently considered and applied in our decisions.

In Montgomery & Eufaula Railway Co. v. Mallette, 92 Ala. 209, 9 So. 363, 365, the law defining the degree of care and the presumption of negligence from the fact of derailment is thus stated:

"There was no error in the charges of the court to the effect that 'the law required the highest degree of care and diligence and skill, by those engaged in the carriage of passengers by railroads, known to careful, diligent and skillful persons engaged in such business.'

\* \* \*

"The authorities present equal unanimity to the proposition that where a passenger receives injuries from the breaking down of the carrier's vehicle, from the derailment of a car, from collisions or the like,— occurrences which ordinarily would not take place but for some negligence on the part of the carrier,—the prima facie presumption is that the injury was the result of the carrier's negligence; and in an action therefor, the plaintiff having shown that he was a passenger, and that he was injured by the derailment, for instance, of the car in which he was being transported, he is, upon this and without more, entitled to recover the damages thereby sustained, unless the defendant, in rebuttal of this prima facie presumption, reasonably satisfies the jury that the derailment was not due to any negligence, and could not have been prevented by the exercise of the highest degree of care, skill, and diligence on the part of the carrier.

\* \* \*

"To rebut and overturn the presumption, the defendant must affirmatively satisfy the jury that it was not guilty of negligence as charged by the court; and this in no sense can be said to be done where the evidence is in such equipoise on the point as not to impress the minds of the jury one way or the other."

Many decisions are there cited. See, also, Alabama Great Southern R. R. Co. v. Hill, 93 Ala. 514, 9 So. 722, 30 Am.St.Rep. 65; Gadsden & Attalla Union Railway Company v. Causler, 97 Ala. 236, 12 So. 439; Southern Railway Co. v. Cunningham, 152 Ala. 147, 44 So. 658; Irwin v. L. & N. R. R. Co., 161 Ala. 489, 50 So. 62, 135 Am.St.Rep. 153, 18 Ann.Cas. 772; Alabama City, G. & A. Ry. Co. v. Sampley, 169 Ala. 372, 53 So. 142; Central of Georgia Railway Co. v. Robertson, 206 Ala. 578, 91 So. 470.

The carrier is not an insurer of the safety of passengers.

In the well considered case of Birmingham Ry. L. & P. Co. v. Barrett, 179 Ala. 274, 60 So. 262, 263, dealing with injury to a passenger while alighting from the train, it is pointed out that this higher degree of care is relative, means: "Though carriers of passengers are bound in respect of their duty to carry safely to exercise the highest degree of care, skill and diligence, and are liable for the slightest degree of negligence proximately resulting in injury, the term 'highest degree of care' is a relative one, and means the highest degree required by law in any case where human safety is at stake, and the highest degree known to the usage and practice of very careful, skillful, and diligent persons engaged in the same business by similar means or agencies, but does not mean that every 'possible or conceivable' act of care or precaution which might increase or even assure the safety of a passenger must be taken, only such as are reasonably practicable under the circumstances, that is, reasonably consistent with the practical operation of the carrier's business."

This principle was applied in a case of injury to a passenger in a motorbus by mud and gravel cast through the window at the driver's seat by a passing vehicle. Mosley v. Teche Lines, Inc., 232 Ala. 110, 166 So. 800.

In some cases, a mere administrative presumption is indulged on the ground that the facts are peculiarly within the knowledge of the defendant, as, for example, the presumption that an employee driving an automobile in course of his master's business, is presumed to be so using the car in case of injury to another in its operation, and the burden is on the owner to show the employee was not at the time operating the car in his master's business, but on a mission of his own. Tullis v. Blue, 216 Ala. 577, 114 So. 185.

The high degree of care required of a common carrier of passengers, the practical construction and maintenance of a railway track in such condition that the train will quite surely not leave the rails, destroying the railway properties as well as endangering human life, are to be considered in dealing with the presumption of negligence in case of derailment due to the condition of the track. The presumption of negligence in such cases, as disclosed by

cases above quoted and cited, is more than a mere administrative presumption. The derailment by reason of the condition of the track raises a prima facie presumption of negligence, the failure to exercise the high degree of care due to passengers. Nevertheless, it is a rebuttable presumption. Notwithstanding the doctrine res ipsa loquitur applies in full force in this and other cases involving the safety of human life, if there be no evidence of negligence other than the fact of derailment, and it be clearly shown by consistent uncontradicted and unimpeached evidence that the derailment resulted from the wrongful and criminal act of some third person or persons in displacing a rail or otherwise causing the train to leave the track, the defendant is due an affirmative instruction with hypothesis. Such is the established rule in this jurisdiction. Lawson v. Mobile Electric Co., 204 Ala. 318, 85 So. 257; Central of Georgia R. Co. v. Robertson, 203 Ala. 358, 83 So. 102; Cruse-Crawford Mfg. Co. v. Rucker, 220 Ala. 101, 123 So. 897.

■ In the absence of evidence disclosing danger of vandalism of this sort at the time and place, known to the carrier, he is not required to anticipate such criminal acts by third persons. Irwin v. L. & N. R. R. Co., supra; Tomme v. Pullman Co., 207 Ala. 511, 93 So. 462.

■ As a corollary to this rule such criminal conduct is not to be presumed. Few cases, if any, disclose a deeper moral depravity, than a wilful tampering with a railroad track with intent to derail a passenger train. Still, as appellant suggests, it is common knowledge that atrocious crimes are committed.

■ The main issue of fact in this case was whether the derailment of the train resulted from the criminal act of some third person or persons in removing or displacing a rail in the track, or from defects in the track due to a want of the high degree of skill, care and vigilance required by law in the matter of maintenance of a safe track.

The carrier, appellant here, insists there was error in refusing the affirmative charge with hypothesis.

The evidence touching the cause of derailment was circumstantial. The train was moving west. The derailment occurred at a point on and near the west end of a curve of some four degrees to the right. It was a dark night, December 18th. It was rainy weather. The train consisted of engine, tender, and five cars. When the engine was brought to an emergency stop, something more than 600 feet west of the point of derailment, it was discovered the wheels of the pony truck, the first to reach the point of derailment were off the rails to the right, the other wheels of the engine were still on the rails. All the wheels save those of the engine were off the rails to the right. The two rear coaches had swung across the track, torn out the right line of rails well nigh to the engine, gone off a high fill and overturned. This line of rails was much bent but held at the joints, save the receiving rail at the point of derailment. This rail was found after the wreck moved forward a short distance, the west end entirely detached and several feet off to the right of its place in the track. The east end was somewhat off to the right but still held to the discharging rail by bond wires, ductile wires connecting the two rails at the joint as a part of the electric signal system.

The structure of the joint where the derailment occurred, the condition and placement of the parts after the event, were matters on which much evidence was produced. The physical facts on this line are relied upon as conclusive evidence of vandalism.

A section off the west end of the receiving rail, a section off the east end of the receiving rail with bond wires attached, two angle bars, four bolts, three nuts and three nut locks, identified as parts of the joint in question, and in evidence before the jury, are sent up for our inspection. They have been carefully examined.

Quite conspicuous is a dent in the ball of the receiving rail at this joint. This dent is approximately one inch in width, extending from the inside line of the crown of the rail.

The witnesses, or several of them, speak of this dent as a flange mark. This implies that in some way the end of the receiving rail had gotten out of alignment with the discharging rail. If made by flanges of car wheels, this dent bears evidence of more than one wheel beating against it. The ball of the receiving rail also shows some beveling at the end where west bound wheels would first contact this rail.

The ninety pound rails, the angle bars, and heavy bolts and nuts with nut locks holding the joint intact were shown to be standard equipment. These bolts were not broken nor bent, nor the threads of bolts or

nuts stripped. It can be said with full assurance that, if tightened up, this joint could not be suddenly torn apart and leave these nuts and bolts as they are. But it cannot be said they do not bear evidence of wear.

The stems of bolts bear evidence of pressure, threads passing through the angle bars are flattened; there is considerable play of the nuts on the bolts, increasing toward the threaded ends, some evidence of punishment of the threads, especially toward the ends. We cannot say there is no evidence of wear on the ends of the nuts in contact with the nut locks. The nut lock is a strong ring-like steel device, working on the principle of the coil spring, exerting constant pressure on the nut, to hold it in place when tightened up.

Evidence tended to show that by reason of depression of the end of the discharging rail under the weight of passing wheels, due to the condition of cross-ties or the bed under the ties, and the jarring effects, would tend to loosen this joint; that nuts do get loose and must be tightened, and, we may infer, the difficulty of keeping them tightened would be greater after age and wear. Further evidence was to the effect that if the joint was loose, and spikes gave way, this rail on the inside of the curve would tend to straighten and so get out of alignment at the joint.

There being evidence that the flange marks on the ties, beginning a few ties west of this joint, were on the right of the rail, if in position; and further evidence that the pressure of the wheels on a right curve is upon the outside rail, a juror asked defendant's witness, Mr. Tobien, a maintenance engineer:

"Mr. Tobien, in the event that a wheel or some part of a train should have hit this rail in that particular position (that is, protruding toward the inside of the track) would the train have been derailed on the inside of this particular rail, or the outside?

"The witness answered: 'I would be unable to make a statement on that. There would be too many things affecting that.'"

We refer to this, as in line with the views of courts dealing with derailment cases, to the effect that many inexplainable things often present themselves in viewing the scene after the train is wrecked.

One feature of the evidence, much stressed in argument, was the testimony of numerous witnesses touching the placement of the angle bars, nuts and bolts, as found after the derailment. Much evidence goes to show these bolts and nuts were found together, as if placed by human hands, on the track and inside the dismembered joint. The four bolts, two through the discharging rail and two through the receiving rail were staggered so that two must needs have been pulled out from the inside, and two from the outside, and the nuts detached on the opposite sides respectively.

This line of evidence, itself dealing with details, is not without dispute or variance as to many of such details. That several trains had passed safely within a few hours, the last a long freight train, affords no strong basis for an inference. In one view, the passing of hundreds of wheels over this track may have more and more weakened this joint and caused a final displacement tending to a derailment. The condition of the joint at the west end of the misplaced rail is matter of conjecture. Whether torn loose from the next rail by the cars which swept the line of rail away is unknown. The matter of close inspection, and the length of time elapsing since the section crew had worked on this stretch of track were matters to be considered by the jury. Likewise, the speed of the train, under all the circumstances, was a jury question.

No evidence of tools found at or near the scene, nor physical signs of the presence of third persons appears. No evidence of motive, nor of any kind points to any particular person as the party guilty of such vandalism. While it was dark, several residences were in the neighborhood, one quite near.

Not undertaking to discuss every detail, we conclude, on a careful study of the whole record, that the cause of this derailment was a question for the jury. The evidence, in some respects, supports the theory of negligence, apart from the presumption obtaining in such cases. There was no error in refusing the affirmative charge for defendant.

We cite the following cases from other jurisdictions, most of them involving the question of derailment wherein vandalism was set up as a defense: Houston & T. C. Ry. Co. v. Lee, 69 Tex. 556, 7 S.W. 324; Chicago, Milwaukee & St. P. v. Irving, 9 Cir., 234 F. 562; Ft. Worth & D. C. Ry. Co. v. Matchett, Tex.Civ.App., 152 S.W. 1113; Galveston, H. & S. A. R. Co. v. Norton, 55 Tex.Civ.App. 478, 119 S.W.

702; notes 1 and 3, 21 N.C.C.A. pages 126 and 127; St. Louis, I. M. & S. Ry. v. Thurman, 110 Ark. 188, 161 S.W. 1054; Shaughnessy v. Director General, 274 Pa. 413, 118 A. 390, 23 A.L.R. 1211; Weber v. C., R. I. & P. Co., 175 Iowa 358, 151 N.W. 852, L.R.A.1918A, 626.

Cases in which a different view was taken of facts there in evidence include, Deyo v. New York C. R. Co., 34 N.Y. 9, 88 Am.Dec. 418; Atlantic Coast Line Ry. Co. v. Temple, 285 U.S. 143, 52 S.Ct. 334, 76 L.Ed. 670.

Each case must turn on its own facts.

Defendant's charge "B" was refused without error.

■■■ There was evidence of many rotten cross-ties and loose spikes in that portion of the track. Conceding that evidence without conflict, showed the few ties at this joint were all sound, it would not follow, as matter of law, that the condition of ties had no causal connection with the derailment. Moreover, the charge is upon the effect of one phase of the evidence, singled out and standing alone. Neither the court nor the jury were required to pass upon the sufficiency of such evidence, standing alone, to warrant a verdict for plaintiff.

The complaint relied upon negligence, in general terms, did not seek a recovery upon any one phase of the evidence tending to show negligence.

Such charges are misleading as tending to minimize or strike down such phase of evidence in giving consideration to the whole evidence touching a want of the high degree of care required by law in cases of this character. Montgomery-Moore Manufacturing Co. v. Leith, 162 Ala. 246, 257, 50 So. 210; 18 Alabama Digest, Trial, pp. 788, 789, ☜244(2).

■■■ Defendant's charge "N" was properly refused.

■■■ The court is not required to instruct the jury there is no evidence of a stated fact. This is a long settled rule. 18 Alabama Digest, Trial, p. 720, ☜194(8).

What we have written sufficiently discloses there was no error in refusing charges "C" "D" "E" "Q" "T" "S" and "V."

■■■ The court is not required to give charges upon issues not presented by the evidence. Franklin Fire Ins. Co. of Philadelphia, Pa. v. Slaton, 236 Ala. 565, 183 So. 865.

Misconduct of the bailiff having charge of the jury during their deliberations was made a ground of the motion for new trial. This misconduct as stated in the motion was the reply of the bailiff to a question by one of the jurors, as follows: "Isn't it a fact that if we do not agree on a verdict before that time, the Judge will keep us together as long as it took to try the case? The trial of the case had consumed one weeks time. The bailiff replied: 'No, seventy-two hours is the limit; and after that time I will take you out and give you water and take you back again.'"

Much testimony, including affidavits of the juror, was presented on the motion.

Just the language used by the bailiff, and whether made and understood as a jest, is not very clear.

The incident came to the knowledge of the trial Judge while the jury were still deliberating on the case. The bailiff was talking of the matter to an attorney, connected or believed to be connected with the defense when the Judge passed by and the matter was called to his attention. Probably the statement then made to the Judge by the bailiff, as given by the Judge on the hearing, was substantially what occurred, towit: "I told them they would have to stay together 72 hours, and then I would give them ice water."

Admittedly, the bailiff had no wrongful intention in his remark.

After reflecting upon the incident, the trial Judge took steps to eradicate any harmful effects by calling the bailiff and instructing him to tell the jury he had no authority to make such statement. The evidence discloses that, accordingly, before the jury reached a verdict the bailiff did so inform the jury. According to the bailiff, he further told the jury, he was only joking.

The affidavits of the several jurors disclose some of them had no knowledge of the incident, others understood all along it was not authoritative, or was in jest. None depose to any matter indicating the jury was influenced in making the verdict.

■■■ We are of opinion the trial court, who considered the matter fully, should not be held in error in denying a new trial on this ground. The case is to be differentiated from the case of Kansas City, M. & B. R. R. Co. v. Phillips, 98 Ala. 159, 13 So. 65, and Alabama Fuel & Iron Co. et al. v. Rice, 187 Ala. 458, 65 So. 402, wherein the statements of the officers were calcu-

lated to coerce a verdict, and were not withdrawn.

For oft stated reasons behind the presumption in favor the verdict of a jury, sustained by the trial court, we cannot affirm the verdict was plainly and palpably wrong and unjust, however persuasive be the evidence of vandalism produced by defendant.

. Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.