# LILLIAN SMITH v. ST. JOSEPH RAILWAY, LIGHT, HEAT & POWER COMPANY, WESTERN DAIRY & ICE CREAM COMPANY and BICHLER MANUFACTURING COMPANY, Appellants.

Division Two, October 6, 1925.

1. **NEGLIGENCE: Uninsulated Electric Wire: Contract: Demurrer.** A fuse box on a cross-beam between two poles took fire, and the assistant superintendent cut the primary wire entering a transformer nearest a tall pole, and the fire was extinguished. This primary wire having been cut, the end hung down to within four feet above an uninsulated guy wire extending from the pole downwards to a smokestack of an engine room, and the end was two or three feet above the transformer and apparently a few inches from the tall pole. It was insulated, but the cut end was exposed. A repair man climbed the pole and got on the roof of the engine room; he then stepped upon the guy wire, put his knee upon the double cross-beam and was in the act of raising himself up when the hanging primary wire containing 2300 volts struck him on the shoulder. He pitched head foremost upon the engine room and died immediately. *Held*, that, although there is no positive evidence that he actually had his foot on the guy wire at the very moment the cut end of the other wire struck him, he was so near that contact with it was easy, and the evidence tending to show that there was no other object near, contact with which would furnish ground and complete the circuit, the court rightly refused a demurrer to the evidence offered on the theory that there was no proof that he was on the grounded guy wire when he came in contact with the high voltage wire.

2. ———: ———: **Proximate Cause: Intervening Agent: Liability of User and Constructor.** If the intervening act is such as might reasonably have been foreseen or anticipated as the natural or probable result of the original negligence, the original negligence will, notwithstanding such intervening act, be regarded as the proximate cause of the injury. And liability does not depend on whether, in the exercise of reasonable diligence, the defendant could have foreseen, or ought to have foreseen, the very injury complained of, but he may be held liable for anything which, after the injury is complete, appears to have been the natural and probable consequence of the act of omission. Therefore, a construction

company which erected a smokestack for a dairy company and placed an uninsulated guy wire upon the pole of an electric railway company and extended it to the smokestack, when it knew, or should reasonably have known, that employees of the railway would often go up and down the pole for the purpose of making repairs and would likely, while on or near the guy wire, come in contact with other live wires on the pole, and the dairy company which maintained the uninsulated guy wire, which formed a perfect ground, and the railway company in allowing it to be maintained on its pole, are all liable for injury to a repair man of the railway company who, exercising due care and in the performance of his duties, stepped upon the guy wire and was immediately struck by the cut end of a high voltage wire which dangled down from the fuse box resting on the cross-arm attached to the pole, which had been cut by the railway company in an effort to extinguish fire in the fuse box. In such case it cannot be held that the proximate cause of the repair man's injury was the hanging wire with which he came in contact, but there could have been no injury had there not been negligence in placing and in maintaining the uninsulated grounded guy wire.

3. ——: ——: Contributory Negligence.   If there is no evidence that the repair man knew or had reason to know that the grounded guy wire upon which he stepped was uninsulated, or that while on that wire he touched the high-power voltage wire whose dangling cut end struck him or knew that it was in close proximity to him, he cannot be charged, as a matter of law, with contributory negligence in failing to see the dangling wire.

4. ——: ——: Negligent Construction: Independent Contractor. A construction company which undertook to install a smokestack for the engine room of a dairy company, and to secure it with necessary guy wires, and knew, as it must, that an uninsulated guy wire attached to the smokestack would afford a ground, and that such a wire attached to the pole of an electric railway would be in the path of the employees of the railway company who would be passing over it in the discharge of their duties in handling dangerous wires, cannot be excused on the theory that it was an independent contractor in erecting the smokestack and installing the guy wire, when sued for personal injuries to a railway repair man, who in the discharge of his duties, stepped upon the uninsulated guy wire and was immediately struck by the dangling end of a high-power voltage wire which had been cut in an effort to extinguish a fire in the fuse box.

5. ——: ——: Instruction: Contributory Negligence.   An instruction declaring that there can be no recovery against a defendant

Smith v. Railway, Light, Heat & Power Co.

if the injured repair man "with full knowledge of such conditions, permitted his body to come in contact with the end of said highly charged wire" is properly refused, where there is no evidence that said repair man permitted his body to come in contact with the wire, and the instruction does not require the jury to find that any act of his was negligent.

6. ———: ———: ———: Concurrent Negligence. An instruction directing a verdict for the defendant construction company which installed the grounded uninsulated guy wire, if the negligence of the electric railway company, to whose pole the guy wire was attached, contributed to the injury to the railway repair man, is properly refused.

7. VERDICT: Apportioned Among Three Defendants: Further Instruction. Where the jury by their verdict found against all the defendants, assessed plaintiff's damages at a named sum, and apportioned it among the three, the court could properly have entered judgment for the full amount against all of them, and did not err in further so instructing them that they returned a verdict in proper form against all of them for the full amount.

Corpus Juris-Cyc. References: Electricity, 20 C. J., Section 67, p. 389, n. 72, p. 391, n. 78; Section 68, p. 392, n. 92; Section 69, p. 396, n. 4. Master and Servant, 39 C. J., Section 1569, p. 1350, n. 83. Negligence, 29 Cyc. p. 491, n. 43; p. 493, n. 55; p. 494, n. 58; p. 495, n. 64; p. 497, n. 74. Trial, 38 Cyc., p. 1619, n. 38; p. 1894, n. 92.

Appeal from Buchanan Circuit Court.—*Hon. Lawrence A. Vories*, Judge.

AFFIRMED.

*Brown, Douglas & Brown* for appellant Railway Company.

(1) There is a failure of proof of the essential allegation that deceased was standing on the guy wire when he was killed. A mere possibility that the accident happened in that manner is insufficient. McGrath v. Transit Co., 197 Mo. 106; Marlowe v. Kilgen, 252 S. W. 424; Pate v. Dumbauld, 250 S. W. 49; Perkins v. Wilcox, 242 S. W. 979; Van Bibber v. Swift & Co., 286 Mo. 317; Grant v. Ry. Co., 190 S. W. 590; Warner v. Ry. Co., 178 Mo. 125. (2) The judgment cannot be sustained on

Smith v. Railway, Light, Heat & Power Co.

the theory that the deceased was in contract with some other conductor or "ground" when he struck the cut end of the south primary wire, for the reason that no such theory is presented by either the pleadings or the evidence. State ex rel. v. Ellison, 270 Mo. 645. (3) The contentions of the other appellants, the Dairy Company and the Bichler Company, that the cutting of the Railway Company's primary wires, and their subsequent repair was the intervening proximate cause of the accident, if well founded, would not permit affirmance of the judgment as against the Railway Company. (a) The Railway Company was not negligent in the cutting and repairing of the wires in the usual and ordinary way. Brands v. St. Louis Car Co., 213 Mo. 698; Chrismer v. Bell Tel. Co., 194 Mo. 189; Martin v. Kline Apparel Co., 249 S. W. 965; Knott v. Iron Works, 253 S. W. 749. (b) Under the pleadings and the evidence the placing and maintaining of the uninsulated guy wire on the appellant Railway Company's pole was an essential concurring factor, without which the accident would not have happened, and it follows that none of the appellants are liable if the guy wire was not shown to be a proximate cause of the accident. Harrison v. Light Co., 193 Mo. 606; Thompson v. City of Slater, 193 S. W. 971; Schmidt v. Transit Co., 120 S. W. 96. (4) Deceased was guilty of contributory negligence as a matter of law. Egan v. Gas & Elec. Co., 233 S. W. 239; Shelton v. Light, Power & Ice Co., 258 Mo. 534; Junior v. Elec. Co., 127 Mo. 79; Bergin v. Tel. Co., 70 Conn. 54; Woodward v. Taunton, 203 Mass. 63.

*Orestes Mitchell* for appellant Dairy Company.

(1) The court erred in submitting this case to the jury against the Dairy Company, because at the best the evidence only shows a mere guess or conjecture as to whether the deceased was standing on the guy wire or not, at the time he was killed, and a jury cannot base a verdict on conjecture. McGrath v. Transit Co., 197

Mo. 106; Marlowe v. Kilgen, 252 S. W. 424; Pate v. Dumbauld, 250 S. W. 49; Perkins v. Wilcox, 242 S. W. 979; Van Bibber v. Swift & Co., 286 Mo. 317; Grant v. Ry. Co., 190 S. W. 590; Warner v. Ry. Co., 178 Mo. 125. (2) Under the facts in this case, the court erred in not sustaining the demurrer of the defendant Dairy Company offered at the close of plaintiff's evidence and at the close of all the evidence, because the evidence clearly shows that the proximate cause of the death of Smith was not any act of the Dairy Company. Washburn v. Laclede Gas Light Co., 202 Mo. App. 102, 284 Mo. 181; Lofty v. Const. Co., 256 S. W. 89. (3) The court erred in refusing to sustain defendant Dairy Company's demurrer at the close of plaintiff's evidence and at the close of all of the evidence, because the evidence showed that the deceased was an expert electrician, of thirty-five years' experience in the service of the defendant Light Company, thoroughly familiar with the electrical equipment involved, and he was guilty of contributory negligence in attempting to climb upon the electrical equipment of the defendant Light Company without informing himself as to whether or not the severed primary wires were charged with electricity. Doerr v. Brew. Assn., 176 Mo. 547; Shuck v. Realty Co., 201 S. W. 559; Henderson v. Railroad Co., 248 S. W. 987; Egan v. Gas & Elec. Co., 233 S. W. 1005; Egan v. Trenton Gas Co., 233 S. W. 239. (4) The court erred in refusing to give to the jury Instruction F. as requested by the defendant Dairy Company. Washburn v. Laclede Gas Light Co., 202 Mo. App. 102, 284 Mo. 181. (5) The court erred in giving to the jury the additional instruction after the return of their verdict. Dunn v. Dunnaker, 87 Mo. 597; Simpson v. Railroad Co., 192 S. W. 740; Gillette v. Laederich, 242 S. W. 114.

*Waldo P. Goff* and *Ryan & Zwick* for appellant Bichler Manufacturing Company.

(1) The court erred in refusing to give the instruction in the nature of a demurrer requested by de-

fendant Bichler Company at the close of the case: (a) Because there was a total failure of proof to show that said defendant owed any duty to the husband of plaintiff, or that his death was the result of any negligence upon its part. The attaching of the guy wire to the pole, months before the accident, was not the proximate cause of the death of plaintiff's husband. Washburn v. Laclede Gas Light Co., 214 S. W. 410, 233 S. W. 725. Before defendant Bichler Company can be held liable for the injury of plaintiff's husband it must be shown: First, that a duty existed on its part to protect the husband of plaintiff from the injury which resulted in his death. . Second, the failure of the defendant to perform that duty. Third, that the injury resulted from such failure of the defendant. Loehing v. Const. Co., 118 Mo. App. 171. (b) There is an utter failure of proof that defendant Bichler Company could have reasonably foreseen or anticipated the probable injury to plaintiff's husband, even if it should be conceded that the guy wire was the conduit that carried the deadly current of electricity into the body of plaintiff's husband and thus caused his death. 29 Cyc. 492, 493; DeMoss v. Rys. Co., 246 S. W. 566. (c)   Because it was conclusively shown that plaintiff's deceased husband was guilty of negligence which directly contributed to and resulted in his death. He was an experienced electric lineman and was sent by his employer to assist in repairing the wires that had been severed by his foreman. He not only knew the dangerous conditions surrounding him, but he was actually warned to look out for the dangers. The live wire that had been severed was dangling before his eyes. It lay over the cross-beam within a few inches of where he laid his gloves which he carried for his protection. He knew that the severed wire was then charged with a deadly current. And yet, with all this knowledge of his dangerous position, he permitted his body to come in contact with a wire containing a current powerful enough to kill him. These facts, under all the authorities, clearly preclude the right of recovery in this case. Junior v. Elec. Light

Co., 127 Mo. 79; Eagan v. Trenton Gas & Elec. Co., 233 S. W. 241; Morris v. L. & P. Co., 258 S. W. 431; Knoles v. Bell Tel. Co., 265 S. W. 1011. (d) The undisputed evidence shows that the death of plaintiff's husband may have occurred from three or four causes. For only one of these causes could the Bichler Company be held liable. The burden rested upon plaintiff to show, by the greater weight of the evidence, the cause of the death of her husband, was due to the negligence of the Bichler Company, as charged in the petition. Biddlecom v. Grain Co., 178 S. W. 756; Hatchett v. United Rys. Co., 175 S. W. 881; Warner v. Railway Co., 178 Mo. 125; Coin v. Lounge Co., 222 Mo. 488. (2) The court erred in refusing to give instructions marked C and D, as requested by defendant Bichler Company. By refusing to give them the court declined to submit the defense of contributory negligence, which is an issue raised in this defendant's answer and is supported by evidence. (3) The court erred in refusing to give instruction marked E as requested by defendant Bichler Company. By refusing to give this instruction the court declined to submit the question of liability of the Bichler Company on account of its being an independent contractor. Heizer v. Mfg. Co., 110 Mo. 612; Curtain v. Somerset, 140 Pa. 70; Marvin Safe Co. v. Ward, 46 N. J. 19; First Presbyterian Cong. v. Smith, 163 Pa. 561; Losee v. Clut, 51 N. Y. 494, 10 Am. Rep. 338; Bragdon v. Perkins-Campbell Co., 87 Fed. 109; Fitzmaurice v. Falian, 147 Pa. 199; Albany v. Cunlif, 2 N. Y. 155.

*Strop & Silverman* and *Chas. H. Wayer* for respondent.

(1) There was no error in overruling the demurrers offered by all of the defendants. (a) There was substantial evidence that deceased was in contact with the guy wire when he was killed, that question was fairly submitted to the jury, and is finally settled by the verdict. (b) Deceased was not guilty of contributory negligence

as a matter of law. Hill v. Union E. L. & P. Co., 260 Mo. 43; Von Treba v. Laclede Gaslight Co., 209 Mo. 662; Trout v. Laclede Gaslight Co., 151 Mo. App. 227; Hickman v. Union E. L. & P. Co., 226 S. W. 570. (2) The cause of the death was the negligent act of the defendant Bichler Company in placing the guy wire, without a strainer-insulator in it, on the pole of the defendant Railway Company, the negligent act of the defendant Dairy Company in knowingly maintaining the wire in that condition on the pole of the defendant Railway Company, and the negligence of the defendant Railway Company in permitting the wire to remain in that condition on said pole, the negligent act of each of the defendants concurring with the negligent acts of the other defendants; under such circumstances, the negligent act of each defendant is, in law, the proximate cause of the injury. Shafir v. Sieben, 233 S. W. 419; Buckner v. Horse & Mule Co., 221 Mo. 710; Obermeyer v. Chair Co., 229 Mo. 111; Daneschocky v., Sieble, 195 Mo. App. 470; Diehl v. Green Fire Brick Co., 299 Mo. 661. (3) Defendant Bichler Company cannot escape liability on the theory of those cases which hold an independent contractor not liable, nor on the theory of those cases which hold the manufacturer not liable where the manufacturer has delivered an article of merchandise to the purchaser, which afterwards, because of an unknown defect in the article, injured some person to whom the purchaser owed a duty. This suit is not brought against the Bichler Company on any such theory. The Bichler Company is sued on the theory that it knowingly built a hidden death trap and set the trap permanently in a place over which it knew human beings would pass, and that such human beings would likely be injured by the trap built by it. And the evidence conclusively shows that the Bichler Company knew of the danger incident to its putting the uninsulated wire around the pole, and knew that it was likely to injure defendant Railway Company's workmen. Its contractual relations with the defendant Dairy Company, or with any other person, are no part

of this case. It cannot escape by saying that it had left its death trap in charge of and under the control of another. Cedarland v. Thompson, 200 Mo. App. 618; Wilton v. Spokane, 132 Pac. 404; Bryson v. Hines, 268 Fed. 290, 11 A. L. R. 1438; O'Brien v. Am. Bridge Co., 125 N. W. 1012; Brown v. Smith, 141 N. W. 2. (4) The court did not err in giving to the jury additional instruction relating to the form of the verdict. Smith v. Means, 170 Mo. App. 158; Hancock v. Buckley, 18 Mo. App. 459; State ex rel. v. Knight, 46 Mo. 83; Hall v. McClure, 212 Pac. 875; Olson v. Nebraska Tel. Co., 127 N. W. 916; Forslund v. Swenson, 192 N. W. 649.

WHITE, J.—The plaintiff sued for damages on account of the death of her husband, William E. Smith. Smith was employed by the St. Joseph Railway, Light, Heat & Power Company, called in the record the Railway Company, and was killed, plaintiff says, while standing on a guy wire attached to one of the Railway Company's poles. The guy wire was owned by the Western Dairy & Ice Cream Company, called in the record the Dairy Company. It ran from said pole to the Dairy Company's smokestack, and had been installed by the Bichler Manufacturing Company, called in the record the Bichler Company. The guy wire was not insulated; plaintiff alleged and offered evidence to prove that while standing on that guy wire, in the service of the Railway Company, the plaintiff came in contact with a high voltage wire, the property of the Railway Company, hanging near the pole; that the guy wire furnished a ground so as to carry the current through Smith's body.

The Dairy Company operated its plant in a building fronting east on Fifth Street, St. Joseph. Along the south side of the building ran Charles Street, and in the rear, on the west, was an alley. The engine room of the Dairy Company, a one-story brick building at the rear, extended to the alley. In the alley, at the southwest corner of the engine room, the Railway Company maintained a tall electric light pole, with cross-arms

towards the top, on which were carried many electric wires. Extending up, on the south side of this pole, next to Charles Street, were a number of spikes for use of linemen of the Railway Company in going up and down the pole. About fifteen feet north of the tall pole was a shorter pole set in the alley. These poles were very close to the rear wall of the Dairy Company's engine room. They sustained a platform between them near the level of the top of the engine room. On this platform were three transformers, belonging to the Railway Company, described by the witnesses as each about three feet in diameter and, from the pictures in the record, they appear to have been about that height. About three feet above the transformers was a double cross-beam extending from pole to pole and bolted at each end to the pole. About five and one-half or six feet above that cross-beam, and about eight feet above the transformers, was another beam extending from pole to pole. Upon this upper cross-beam were two wooden fuse boxes over the north and middle transformer. There was no wooden fuse box over the south transformer, the one next the tall pole, although it appears from the evidence there had been one at some time. High voltage wires came through the fuse boxes and descended into the transformers below; the south fuse box being absent, one such wire came down from the primary direct.

Attached to the pole at the southwest corner of the engine room, and nearly on a level with the top of the transformers, about two or three feet below the double cross-beam, was a guy wire, which from that point slanted upward in a northeasterly direction, to the smokestack of the Dairy Company in the engine room. How far the smokestack was from the pole is not stated. This wire was not insulated, and its maintenance in that position, it is charged by the plaintiff, was the proximate cause of her husband's death. Another guy wire attached to the same pole and at the same place, almost touching the Dairy Company's guy wire, extended eastward along

Charles Street to another pole maintained by the Railway Company at the corner of Fifth and Charles streets.

This latter guy wire was insulated by what is called a current-breaker, or a strainer-insulator, a contrivance made of porcelain, a non-conductor of electricity. From the picture it seems to be a sort of porcelain block through which the end of one wire is looped to extend in one direction and the end of another wire is looped to extend in the opposite direction, in such way that the wires do not come in contact at that point, so that the circuit is completely broken. There was evidence tending to show that this contrivance cost only eighteen cents, and could be easily used on the Dairy Company's guy wire. Several such strainer-insulators appear to have been upon some wires, presumably guy wires, attached higher up to the tall pole. Employees of the Railway Company testified that they were always used by that company on guy wires so as to prevent a grounding and conducting of the current from any high voltage wire they might chance to touch or make connection with.

July 31, 1922, the north fuse box, farthest from the tall pole, took fire. The fire department and the trouble man of the Railway Company came, and for a time were unable to extinguish it. Mr. F. R. Murphy, assistant superintendent of the defendant Railway Company, in charge of the men who were vainly attempting to put the fire out, pulled out the middle fuse on the top cross-arm, thus deadening the middle primary wire. He then cut the primary wire entering the south transformer nearest the tall pole. This appeared to be necessary in order that they might put out the fire. All electric connection being then broken the fire was readily extinguished. After the fire was out Mr. Murphy proceeded to reconnect the north wire. While Murphy was thus engaged William Smith arrived at the scene for the purpose of assisting in repairing the damage done. The south primary wire had been cut as stated, so that the end hung down to about four feet above the guy wire, and the end was two or three feet above the south trans-

former and apparently within a few inches of the tall pole. It was insulated, but the cut end was exposed. Smith climbed the pole and got on the roof of the engine room. He then stepped upon the Dairy Company's guy wire, put his knee upon the double cross-beam and was in the act of raising himself up when the hanging primary wire containing 2300 volts struck him on the shoulder. He pitched head foremost upon the top of the engine room and died immediately.

Experts and others on the same day attempted to ascertain how he received the shock. Plaintiff introduced evidence to show that excepting the Dairy Company's guy wire there was no ground which could have made the circuit complete when the hanging wire struck him. The other guy wire attached to the same place upon which he probably would have to stand at the same time was insulated with strainer-insulators. A ground wire ran down the tall pole connected towards the top with the lightning arresters. It had been cut loose at the top. It could not have carried the current, because it was insulated. Evidence for the plaintiff further tended to show that the transformers were not "hot," that is, not charged with electricity; so the men, working at the time there, who had their hands on them, testified. No other wire or object which could conduct electricity at that point furnished a ground by which the current from the primary wire could have been carried through Smith's body except the Dairy Company's guy wire. Further it was shown that the guy wire was attached to the Dairy Company's smokestack which was planted in such way as to afford a perfect ground, so that the circuit was complete when Smith had his foot on the guy wire and the hanging wire struck him. The evidence of physicians who examined him showed that the current probably entered his body at the right elbow and came out in the toe of the right foot. His shoe and sock were exhibited to indicate that. While leather is a non-conductor, Smith's shoe sole contained tacks which could conduct the current to the wire on which he stood.

The defendants introduced evidence tending to show that the transformers were charged at the time; that Smith was not standing on the guy wire when the current struck him, but on the south transformer.

At the close of the plaintiff's evidence and again at the close of all the evidence, each of the defendants presented a demurrer, all of which were overruled.

The plaintiff seeks to recover against the Dairy Company for maintaining an uninsulated guy wire which formed a perfect ground when it knew, or had reason to know, that employees of the Railway Company were often obliged to go up and down the pole for the purpose of making repairs, and were likely, at any time while on or near the guy wire, to come into contact with the live wires. Plaintiff seeks to recover against the Bichler Company because that company erected the smokestack and placed the uninsulated guy wire for the Dairy Company upon the pole, when it knew the pole would be so used, being well acquainted with the dangers of electricity, and knowing the effect of installing a guy wire without insulation in that position. The plaintiff seeks to hold the Railway Company for permitting the Dairy Company to maintain the guy wire in the condition mentioned. There was evidence tending to show that the Dairy Company's guy wire was placed on the pole without the knowledge or consent of the Railway Company.

On this evidence the jury returned a verdict for the plaintiff against all three of the defendants for ten thousand dollars; all the defendants have appealed, and the case is here by two numbers on such appeals.

I. It is first claimed that the demurrer to the evidence ought to have been sustained because there is no proof that Smith was on the guy wire when he came in contact with a high voltage wire. One Arch White, who was near and saw Smith fall, testified that Smith was partly on the tall pole and partly on the cross-beam, two or three feet above the guy wire; he had his foot on the guy wire and raised the other foot to get on the cross-beam when the

Contact With Live Wire.

310 Mo. Sup.—31.

wire struck him in the shoulder. A written statement made by White was offered in evidence by the defendants, in which he said that Mr. Smith stepped on the guy wire and, after he stepped on it, was starting to pull himself up, when the wire hit him.

On cross-examination Mr. White stated he didn't know whether Smith still had his foot on the guy wire when the primary wire struck him; at that instant he was looking at Mr. Murphy. It was for the jury to say whether, under the circumstances, he had stepped off.

Other witnesses who saw Smith fall were not certain about what he stood on or just when the primary wire struck him, but all of the witnesses placed him at the point where White described him to be in ascending the pole. Suppose we say there was no positive evidence of any witness who saw it that Smith actually had his foot on the guy wire at the moment he was struck. He was at it, had been on it, and was so near that contact with it was easy, and the evidence tends to show there was no other object near, contact with which would furnish ground and complete the circuit. From the circumstances the jury would be warranted in finding that he was then in contact with the only wire which would carry the current through his body. A case was made for the jury.

II. The Dairy Company and the Bichler Company claim their demurrers should have been sustained because the erection and maintenance of the guy wire, although uninsulated and dangerous, was not the proximate cause of the death; that the immediate and proximate cause was the hanging primary wire with which Smith came in contact. Those appellants cite the case of Washburn v. Laclede Gas Light Co., 202 Mo. App. 102, where the opinion by the St. Louis Court of Appeals was approved by Division Two of this court on certification here (284 Mo. 181). The facts in that case are very similar to the facts here, but a close examination of the facts would show reason for distin-

*Proximate Cause: Intervening Agent.*

guishing that case from this. However, a later ruling of this court en banc, in the case of Shafir v. Sieben, 233 S. W. 419, and other cases involving the same incident, are controlling on this point. The Kansas City Court of Appeals also passed upon the same incident, in case of Daneschocky v. Seible, 195 Mo. App. 470. In the Shafir and the Daneschocky cases, the defendant, a building contractor, placed obstructions on the street so that pedestrians were obliged to walk out towards the middle of the street in passing the place, and a number of such pedestrians while passing around the obstructions were struck and killed or injured by an automobile driven by a drunken man. The contractor was held liable. Those cases are consistent with the rulings of this court in a number of cases, such as Buckner v. Stock Yards Co., 221 Mo. 700; Dean v. Railroad, 199 Mo. 1. c. 411. JUDGE ELLISON in the Daneschocky case cites many authorities and aptly states the doctrine in relation to proximate cause (1. c. 473):

"Lawyers from early times, induced by the ordinary meaning of words, and seeming necessity, have been led into the thought that since the word 'proximate' means immediate, or next to, the only actionable cause is the cause which actually did the injury; and that any prior cause, no matter how closely related, was a removed cause and therefore not proximate, and therefore not actionable."

Then further (1. c. 474):

"When the rule is stated in its full breadth, viz., that a separate intervening cause will break the line of causation leading out from the first cause and, in law, absolve the first cause from all responsibility, it is the statement of a mere arbitrary rule, which in practical application would lead to results opposed to sound reason. The rule should always be accompanied by the qualification, 'that if the intervening act is such as might reasonably have been foreseen or anticipated as the natural or probable result of the original negligence, the original negligence will, notwithstanding such interven-

ing act, be regarded as the proximate cause of the injury.' ''

And further (page 475):

"An intervening cause should not be held to excuse the first cause, unless such intervening cause is one so unusual and so improbable as not to be reasonably foreseen or considered by an ordinarily prudent man.''

These appellants argue that the Bichler Company in placing the guy wire, and the Dairy Company in maintaining it, and the Railway Company in allowing it to be maintained on its pole, could not possibily have foreseen that a fuse box would take fire and necessitate the cutting of the primary wire.

As this court said in the Buckner case, supra (221 Mo. l. c. 710), the liability does not depend upon whether in the exercise of reasonable diligence the defendant could foresee, or ought to have foreseen the very injury complained of, but he may be held liable for anything which, after the injury is complete, appears to have been the natural and probable consequence of the act or omission. The appellants ask us to apply the rule so as to excuse them because they could not foresee nor anticipate the very situation in all particulars which produced the death of Smith.

All the defendants knew, or they are charged with knowledge, that the uninsulated guy wire, attached as it was to the smokestack, afforded a ground so that it would carry a current from any charged wire that might come in contact with it. They also knew that the pole was arranged and equipped with iron spikes, or steps, for men to ascend. They knew, or had reasonable cause to know, that employees of the Railway Company were continually ascending the pole in their duties for the purpose of repairing the many high-power wires carried higher up on the pole, and that it was nothing unusual for those wires to become out of repair, requiring care. They knew that high-power wires descended into the transformers, where the current was modified for use in that part of the city, and that frequent attention to those instruments by

the employees of the Railway Company was required. They knew, or should have known, that at any time some contingency might happen to expose some of those high-power wires, and that there was danger of an employee of the company, in the performance of his duty, coming in contact with them while near or touching the guy wire. In other words, they knew the guy wire was dangerous to anyone working about those appliances who might come in contact with the high-power wire.

The demurrers were properly not sustained on that ground.

III.   The appellants claim that their demurrer to the evidence should have been sustained because Smith was guilty of negligence which contributed to his death.   The argument is that the live wire which had been severed was dangling before his eyes, and with the exercise of ordinary care he should have seen it, and should have protected himself from it.   There is no evidence that he knew or had reason to know that the guy wire upon which he stepped was not insulated.   There is no evidence that he intentionally touched the high-power wire or that he knew it was there.   The witness said it "struck him."   It must have swung against him.   There were a great many things to keep his attention in climbing, and there was no evidence to indicate that he failed to use ordinary care. One Edward E. Fields testified that he warned Smith, saying: "Look out Ed, that wire is hot."   But he didn't know whether Smith heard him or not.   Fields also said he didn't know there was an uninsulated wire there; that he supposed the guy wire had a strainer-insulator on it.   Thus Fields, who was one of the foremen on the job, had no knowledge of the danger of contact with that guy wire, and there is nothing to show that Smith knew more about it than he did.   Whether Smith's negligence contributed to his injury was a question for the jury.

Contributory
Negligence.

IV.   The Bichler Company assigns error to refusal by the court of an instruction offered by it on the theory

that it was an independent contractor in erecting the smokestack and in installing the guy wire. It contends that it performed that work under the direction and according to the plan of the Dairy Company, and that it is not responsible for the result. **Independent Contractor.** Heizer v. Manufacturing Co., 110 Mo. 605, is cited. The evidence does not sustain that contention. The Bichler Company undertook to install the smokestack for the Dairy Company and secure it with necessary guy wires. It knew that a guy wire uninsulated attached to the smokestack would afford a ground, and it knew that in attaching such a wire to the pole it would be in the path of the employees of the Railway Company who would be passing over it in the discharge of their duty in handling dangerous wires. [See Bryson v. Hines, 268 Fed. l. c. 290; Cedarland v. Thompson, 200 Mo. App. l. c. 625.] The theory of independent contractor did not excuse it.

V. The Bichler Company assigns error to the refusal by the court of Instructions C and D, asked by it on the ground that thereby the court refused to submit the question of contributory negligence. The **Concurrent Negligence.** first of these instructions is upon the theory that Smith "with full knowledge of such conditions, *permitted* his body to come in contact with the end of one of said highly charged wires." There was no evidence that he "permitted" his body to come in contact with the wire, and the instruction does not require the jury to find any act of his was negligent. It was properly refused.

Instruction D is equally faulty, because it directs a verdict for defendant Bichler Company, if the Railway Company's negligence contributed to Smith's injury. The refusal of other instructions asked by appellant is assigned as error, but none of them adequately covers the facts pertinent to the point to which the instructions were directed.

VI.   The jury returned the following verdict:

"We, the jury in the above entitled cause, find for the plaintiff and against all of the defendants, and we assess plaintiff's damages at $10,000.00, pro-rated as follows:

"St. Joseph Railway, Light, Heat & Power
    Company ...................................$6,000.00
"Bichler Manufacturing Company ....... 3,000.00
"Western Dairy & Ice Cream Company .. 1,000.00"

Appellants do not complain of that form of the verdict, but they complain of an instruction which the court then gave to the jury as follows:

"Gentlemen of the Jury:

"The verdict returned by you is rejected by the court, because it is improper in form in part.  The jury have no right to pro-rate any sum you may find for plaintiff among the defendants.  The law makes full provision as to the liability of each defendant under a verdict against all of them.  All that is necessary for you to do is to carefully follow that form of verdict attached to your instructions and which is suitable to your intentions."

The court could very properly have entered judgment against all the defendants on the verdict as rendered for the full amount of the verdict.  Under the instruction which the court then gave, the jury returned the verdict in proper form for the full amount against all the defendants.

It has been held by this court that where a jury misunderstands the instructions the court may further instruct them so that they may render verdict in accordance with the law.  [State v. McNabb, 267 S. W. 606, and cases cited.]

Finding no reversible error in the record the judgment is affirmed.  All concur.