HOPE BASKET COMPANY *v.* THOMASSON.

4-3828

Opinion delivered May 6, 1935.

*McRae & Tompkins,* for appellant.

*L. L. Mitchell* and *E. F. McFaddin,* for appellee.

MEHAFFY, J. The appellee, Joe Thomasson, brought this suit in the Hempstead Circuit Court against the appellant, Hope Basket Company, for injuries received

while he was in the employ of the appellant, and in the performance of his duty as such employee.

The Hope Basket Company owns and operates a basket factory in Hope, Arkansas, and is engaged in the manufacturing and selling of various kinds of baskets. There are different rooms where the materials are assembled, cut, and worked up into baskets. At the time of appellee's injury he was working in what was called the cover shed. He was injured by being struck by lightning. The cover shed has a concrete floor, and the walls and roof are of sheet iron. There are seven large openings or doors in the building ranging from three feet to seven feet in width. Also there is a large number of windows. At the time of the injury the weather was hot, and the doors and windows were open. All the machines in the cover shed were operated by electricity, and the building was equipped with electric lights. The company generated its own electricity. There were three large wires entering the cover shed through the east wall. On the south wall of the cover shed the electric light wires entered through a wall to a light which hung just outside the wall. Appellee was working at the time as a band bender at a metal machine, and he was required to get long wooden strips from a boiling vat outside the cover shed on the south side of the building. He would place a band in the machine, turn the crank or handle, which would bend the band into a hoop, and he would operate the machine so as to fix the staples in the hoop, the staples being cut by the machine from steel wire which came into the machine through a hole in the metal wall of the cover shed. Prior to the accident there had been two motors in the cover shed, but one of these had been removed some days before the injury, and the wires to this motor had been clipped loose, and the evidence is in conflict as to whether the wires so cut had been taped up.

About 7:30 p. m. on July 6, 1934, during a thunder storm, there was a heavy crash of lightning. Appellee was struck by the lightning, rendered unconscious and seriously injured. The lights in the cover shed were not

put out, and the machines operated by electricity were not stopped.

Appellee alleged that he was injured by the negligence of the appellant, and he would not have been struck by the lightning except for the negligence of the appellant. Several grounds of negligence were alleged, among which were failure to furnish a reasonably safe place in which to work, and safe appliances with which to work; failure to have lightning arresters; leaving loose electric wires exposed; permitting the steel staple wire to run through metal wall without insulation; having a defective ground on the generator; and having defective electric wiring installed.

The appellant filed answer admitting that the appellee was in its employment as a band maker, and admitting that, while appellee was engaged in operating one of the band machines for appellant, he was struck by lightning during a thunder storm, but denied that it was the result of negligence or carelessness on its part, denied all the allegations of negligence by appellee, and alleged that the accident and injury was caused by the act of God.

There was a verdict and judgment for appellee for $5,000, and to reverse this judgment this appeal is prosecuted.

Appellant's first contention is that the court erred in refusing to direct a verdict in its favor. It is argued that expert electricians made a careful examination of the cover shed, all the wiring and equipment, and the machine at which appellee was working when the lightning struck him, and, after making a close examination, none of them ever found any evidence of where the lightning bolt struck. There is but little conflict in the evidence.

The appellee himself testified that he was 24 years old, and had been working in the cover shed about three months, the last time, but had worked there in the years 1927, 1928 and 1929, doing the same kind of work that he was doing when he was injured. The factory at the time of the injury, was working three shifts of men and appellee was working at night. He testified that the band machine where he worked stands about 5½ feet, and has

a crank on the right side that you turn with your hand. The strip is fed in with the left hand, and the crank is turned at the same time with the right hand; then the operator steps his foot on the pedal which puts two staples in, and then, by stepping on another pedal, the finished hoop is kicked off. When he turned the crank with his right hand, his right arm came in close proximity to the wire that came into the machine. The appellee got his bands out of the vat outside of the cover shed. These strips are boiled in water in a vat to keep them from breaking when they are bent. The walls and roof are made of sheet iron. Appellee would step to the vat outside, take out a bunch of bands, and put them on a rack by the machine he was operating; the bands were wet and water would drip on the floor and keep it wet. It was about 7:30 p. m. when he was injured. He testified that he was standing by his machine working, and the last thing he remembered he heard a loud report and saw a big flash on his right side. He was knocked unconscious and woke up in the hospital. It looked to him like the ball of fire came from the wires on the right. He knew nothing about electricity, could see some wires up there, and also a switch box. There had been another set of wires that went to the other motor in the cover shed, and the switch on that set of wires was right by his side. The wires came off the main wires to this second switch and led to the second motor. The second motor had been taken down and out at the time he was hurt, but the wires that came off the main service wires were not taken out. The wires above the switch were left hanging there. The little wire that made the staples that went into the bands came from a metal pan just out the south wall of the cover shed, and the wire ran through a hole punched through the south wall of the cover shed into the machine appellee was operating. Appellee was feeding a band into the machine with his left hand and turning the crank with his right hand when the crash came. This stapling wire that fed into the machine had no insulation or covering on it, it was naked wire; it dragged on the wall where it came through the hole and rested on the metal where the hole was punched through. He testified that the ball of fire

seemed to come from his right side, and that he saw a piece of blue fire come in from the small wire that runs through the main building. He does not know where it came from, but it came there on that wire.

Several witnesses testified that there was no effective ground on the generator, it was not fastened effectively, and some of the wires were not insulated. There was evidence that, if the wires had been insulated and properly grounded, the lightning would have gone into the ground. Some of the witnesses testified that they could find no evidence where it had struck. Expert witnesses, however, testified that it might strike and leave no evidence at all. The evidence clearly shows that the lightning did not go in through the door, and the experts testify not only that it did not go through the doors, but, that it must have come through the doors or over the wires. They also testify that the lightning which struck appellee was not a direct hit, it must have come over some of the wires. The witnesses who took out the other motor and cut the wires testified that they taped them up. Appellee, however, testified that they did not.

There was ample evidence of negligence to justify the court in refusing to give an instruction directing the jury to find for appellant. It is true this injury occurred when there was a severe storm, but this should have been anticipated by the appellant.

"Weather conditions within certain limitations are to be anticipated and guarded against by a company maintaining poles and wires along streets and other places. While not bound to anticipate a storm of a severity never before known, it is bound to use reasonable care to guard against the wind and sleet storms usually encountered in the climate where the line is constructed. Failure to exercise a reasonable degree of care to protect its lines from such storms may be a ground of negligence, and may charge the company with liability for injuries resulting from its failure to use such care." Curtis on Electricity, 675.

The appellant contends that this injury was caused by the act of God, and it is not liable. "While there can be no liability for an act of God, speaking broadly, every

person is liable for the proximate results of his own negligence; and, if an accident is due to the combined effects of a person's negligence and an act of God, the injury is considered the proximate result of the negligence, and recovery therefor may be had. If a wire is negligently secured and it breaks or falls to the street in a storm of not unusual severity, the company is liable for the injury, though it would not have happened had not the storm occurred.'' Curtis on Electricity, 676.

"The possibility of atmospheric electricity being conducted into a building by telephone or other wires seems to be a matter of common knowledge, of which the court will require no proof. While a company whose wires enter a building is not an insurer of persons or property from the effects of atmospheric electricity passing along such wires, and while, as a general proposition, it is not required to insulate its wires so as to render them inaccessible to such electricity, it is required to exercise such care as is commensurate with the danger from lightning entering the building. It is bound to anticipate that, unless such devices are installed to prevent it, lightning may follow its wires into a building, and that very serious personal injuries may result therefrom to the occupants of the house, and that the building may be set on fire by such current. Inasmuch as lightning arrestors or other devices for the prevention or lessening of danger from lightning may be installed by telephone or other company at a moderate expense, it seems reasonable to hold that its failure to install such devices presents a case of negligence which renders it liable for such damages as result from its failure. The question whether the company was negligent in failing to equip its lines with devices to exclude lightning is generally for the jury.'' Curtis on Electricity, 679, *et seq.*

" A company maintaining electrical wires, over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have a right to go, either for work, business, or pleasure, to prevent injury. It is the duty of the company, under such conditions, to keep the wires perfectly insulated, and

it must exercise the utmost care to maintain them in this condition at such places. And the fact that it is very expensive or inconvenient to so insulate them will not excuse the company for failure to keep their wires perfectly insulated. 1 Joyce on Electricity, 735.'' *Ark. P. & L. Co. v. Cates,* 180 Ark. 1003, 24 S. W. (2d) 846.

There is evidence that the appellant failed to insulate some of its wires; that it left loose wires hanging in the shed without taping up; that it failed to ground its generator; that the lightning that struck appellee did not come through the doors. It must therefore have come over one of the wires. As to whether the appellant was negligent in these matters was a question for the jury, and the court did not err in its refusal to direct a verdict for appellant.

The appellant calls attention to a number of cases holding in effect that where an injury may have resulted from either of two causes, for one of which the master is liable, and for the other of which he is not, the burden of proof is upon the injured servant to show that the injuries resulted from the cause for which the master is liable, and if the evidence merely leaves to conjecture, the servant cannot recover.

The court has announced the doctrine contended for here by appellant many times. But if the lightning could not have come through the door, it must therefore have come over the wires of the appellant, and, if so, and the appellant's wires were not properly insulated or grounded, the appellant would be liable, and whether the appellant was guilty of negligence was a question, as we have already said, for the jury, and not the court.

It is next contended by the appellant that the court erred in giving appellee's instruction No. 3. That instruction is as follows:

''If you find from the preponderance of the evidence in this case: First, that the plaintiff was injured; and, second, that the injury to the plaintiff was caused directly by the negligence of the Hope Basket Company, as alleged in the amended and substituted complaint, concurring with the bolt of lightning; and third, that the plaintiff would not have been injured by the bolt of light-

ning if the defendant had not been negligent, as alleged in the amended and substituted complaint. If you should find all three of these points by a preponderance or greater weight of evidence, then you are instructed that the Hope Basket Company would be liable to Joe Thomasson for such injuries as he sustained, if any. And unless you find all three of these points by a preponderance or greater weight of the evidence, then your verdict will be for the defendant.''

The objection made to that instruction was a general objection, and then the appellant said it specifically objected to the language ''as alleged in the amended and substituted complaint.'' It is argued by appellant that there were some allegations of negligence in the complaint not supported by any evidence. We do not agree with the appellant in this contention, but, even if it were true, the appellant should have asked the court to instruct the jury that there was no evidence to support certain allegations of negligence. We do not think, however, that instruction No. 3 was open to the objection urged by appellant. The court gave, at the request of the appellant, several instructions covering every contention of the appellant. We have carefully examined all the instructions, and have concluded that, when the instructions are considered together, the jury could not have been misled.

The appellee calls attention to numerous authorities discussing lightning cases, but we do not deem it necessary to review these authorities. We think the only question in this case was whether there was substantial evidence of appellant's negligence to justify the submission of the case to the jury. There is no contention that the appellee was guilty of any negligence, and it is therefore solely a question of whether the evidence shows that the appellant was guilty of negligence. Appellant does not contend either that the appellee was guilty of negligence or that the verdict was excessive.

We find no error, and the judgment is affirmed.

McHaney and Baker, JJ., dissent.