KILLOREN ELECTRIC COMPANY *v.* HON.

4-8093                                     200 S. W. 2d 775

Opinion delivered March 31, 1947.

*Bailey & Warren,* for appellant.

*Bates, Poe & Bates,* for appellee.

Ed. F. McFaddin, Justice. In this case, lightning is claimed to have traveled over electric wires, and inflicted personal injuries on appellee; and he seeks to hold appellant liable, claiming appellant's negligence concurred with the lightning within the rule of the cases collected and cited in West's Arkansas Digest, "Negligence," § 61.(1). Here are the facts:

In 1942, Killoren Elec. Co. constructed a transmission line for the Arkansas Valley Electric Co-op. in and near the community of Hon, Arkansas. The transmission line was designed to carry 7,200 volts of electricity. Included in the said construction work was the placing of a transformer on a pole near the home of the plaintiff (the transformer being to reduce the voltage from 7,200 to 110), and the running of service wires (to carry 110 volts) from the transformer to the wall brackets located on the southwest corner of the Hon home. That was the extent of the work of the Killoren Elec. Co. in so far as the Hon home was concerned. The wiring of the Hon home, the installation of a meter near the wall brackets, etc., were matters not performed by appellant company.

The Ark. Valley Elec. Co-op. accepted the Killoren Elec. Co.'s work as completed and satisfactory in every respect on March 17, 1943. Later Ed Hon (plaintiff and appellee here) began using electricity from the Ark. Valley Elec. Co-op., and was a member of said cooperative and user of its electricity on June 5, 1944, when he received the injuries here involved. On the afternoon of

that day, Hon was standing in the kitchen (the northeast room of his home) looking out the door, and with his right hand resting on the wall a few inches from the electric switch, when "a blinding flash of lightning" knocked him to the floor and inflicted the injuries here claimed. There was a burned print of his hand on the wall. The sockets and receptacles in the downstairs rooms were burned, and the wall around the sockets was damaged; the refrigerator was burned out; the circuit breaker was tripped; the entire wiring inside the house was clearly damaged.

Ed Hon sued the Killoren Elec. Co. for damages for his personal injuries, claiming that he was injured by a charge of lightning which reached him through, and because of, the defective wiring negligently installed by Killoren Elec. Co. at the transformer on the pole near the Hon home. The Killoren Elec. Co. answered by general denial, and also pleaded that it was an independent contractor in the work for the Arkansas Valley Elec. Co-op.,[1] and therefore was not liable to Ed Hon.

Upon issues joined, there was a trial to a jury, and a verdict for Hon against Killoren Elec. Co. for $1,000. To reverse that judgment, there is this appeal.

We have several cases involving persons injured by high voltage, either of electricity or lightning (which is electricity of enormous voltage). Some of these cases are: W. 2d 503; *S. W. Tel. & Tel. Co.* v. *Abeles,* 94 Ark. 254, 126 S. W. 724, 140 Am. St. Rep. 115, 21 Ann. Cas. 1006; *Hope Basket Co.* v. *Thomasson,* 190 Ark. 956, 82 S. W. 2d 241; *Ark.-Mo. Power Corp.* v. *Powell,* 200 Ark. 309, 139 S. W. 2d 383; *S. W. Tel. & Tel. Co.* v. *Bruce,* 89 Ark. 581, 117 S. W. 564; *S. W. Gas & Elec. Co.* v. *Bianchi,* 198 Ark. 996, 132 S. W. 2d 375; and *Ark. Gen. Utilities Co.* v. *Wilson,* 197 Ark. 351, 122 S. W. 2d 956. The present case differs from the cited cases in this: in each of the cited cases the wires and electrical installations

---

[1] The Ark. Valley Elec. Co-op. could not have been held liable to Hon because of the rule announced in the decision of this court in the case of *Ark. Valley Elec. Co-op.* v. *Elkins,* 200 Ark. 883, 141 S. W. 2d 538. But see Act No. 362 of 1947. This act is mentioned only for information; obviously it has no effect on this present case.

were, at the time of the injury, under the control and maintenance of the company claimed to be liable, while here the company claimed to be liable had no control over the wires or installations at the time of the injury. The plaintiff's (appellee's) theory of liability in this present case is, that the defendant company had been negligent in the original construction, and was therefore liable to the plaintiff as the injured party. Some of the cases and texts cited and relied on by the plaintiff are: *Monroe* v. *San Joaquin L. & P. Corp.*, 42 Calif. App. 2d 641, 109 Pac. 2d 720; *Payton's Adm'r* v. *Childers Electric Co., et al.*, 228 Ky. 44, 14 S. W. 2d 208; *Smith* v. *St. Joseph Ry. Co.*, 310 Mo. 469, 276 S. W. 607; *So. Tel. & Tel. Co.* v. *Evans,* 54 Tex. Civil App. 63, 116 S. W. 418; *Appal. Power Co.* v. *Mitchell,* 145 Va. 409, 134 S. E. 558; *Colbert* v. *Holland Furnace Co.,* 333 Ill. 78, 164 N. E. 162. For texts, see 14 R. C. L. 107, 45 C. J. 885, 20 C. J. 366. The following Arkansas cases are cited by plaintiff as indicating the trend of our holdings indicating liability: *Stanton-White Dredging Co.* v. *Braden,* 137 Ark. 127, 208 S. W. 598; *Foohey Dredging Co.* v. *Mabin,* 118 Ark. 1, 175 S. W. 400; *Wood* v. *Drainage District,* 110 Ark. 416, 161 S. W. 1057.

We shall not be obliged to determine the correctness of the plaintiff's theory of the defendant's legal liability, because—as we see the case—it must be reversed and dismissed because of plaintiff's failure to make certain essential proof. This will be discussed in detail later. To reach the verdict that it did, it was necessary for the jury to find from the evidence, at least, the concurrent existence of these two points: (1) that the lightning traveled over the transmission lines of the Ark. Valley Elec. Co-op.; and (2) that there was no proper ground wire and lightning arrester ever installed by the Killoren Elec. Co. at the transformer where the electrical current was reduced from the transmission line voltage of 7,200 to the service line voltage of 110.

We reverse and dismiss this case because of the plaintiff's failure to prove the second point as above listed. That point was, "that there was no proper ground wire and lightning arrester ever installed by Killoren

Elec. Co. at the transformer . . .'' Such alleged failure was "the act of negligence" claimed to have been committed by the defendant. On that act of alleged negligence was predicated the plaintiff's contentions that the Killoren Elec. Co., even as an independent contractor, was liable to the plaintiff for the injury. Since Killoren Elec. Co. was not in charge of the power line and installations at the time of the defendant's injuries, Killoren Elec. Co. could not be charged with negligent maintenance; so the plaintiff, in order to recover, had to prove (even under his theory of the case) the negligent installation by Killoren Elec. Co. The failure to prove such point is fatal to the plaintiff's case. Let us examine the evidence on that point:

Killoren Elec. Co. entered into a contract with the Ark. Valley Elec. Co-op. to construct the transmission line, install the transformer on the pole near the Hon home, and run the service line to the outside of the Hon home. This contract was completed by the Killoren Elec. Co.; and, on December 12, 1942, J. D. Long, the inspector of the Rural Electrification Administration, inspected the entire work done by the Killoren Elec. Co., and made a written report, which reads in part:

"The construction throughout the project is good . . . Transformers and services are properly and uniformly installed and the project throughout shows a good quality of workmanship."

Hugh Lassiter, engineer for the Ark. Valley Elec. Co-op., testified that, on December 8, 1942, he inspected the entire work done by the Killoren Elec. Co., and advised the Arkansas Valley Elec. Co-op. that the work was complete in every respect. Lassiter said that he personally inspected the transformer on the pole near the Hon home. He testified:

"Q. Was the transformer a standard transformer? A. Yes, sir. Q. Did it have a lightning arrester? A. Yes, sir. Q. Was it a suitable lightning arrester? A. Yes, sir. Q. Who put it on there? A. It was put on by the manufacturer. Q. Was it a standard factory adjusted transformer? A. Yes, sir. Q. Did you inspect the grounds?

A. Yes, sir. Q. Was that transformer grounded properly? A. Yes, sir. Q. How? A. The ground wire from the transformer was attached to a rod driven in the ground. Q. Do you know of any way to ground a transformer any more completely than that? A. No, sir.''

Based on these two inspection reports, the Ark. Valley Elec. Co-op., on March 17, 1943, accepted Killoren Elec. Co.'s work as complete, and Killoren Elec. Co. *never* had any further control over the transformer in question. Then, more than 14 months later, the plaintiff was injured. Was it through the fault of Killoren Elec. Co. that he was injured? The only testimony Hon offered to establish the negligence of the Killoren Elec. Co. in the installations of the transformer and lightning arrester was the evidence contained in the two items which we now list:

(a) The witness Helms testified that several months *after* Hon was injured, Helms examined the transformer on the pole near the Hon home, and that part of the lightning arrester was then missing from the transformer. But it will be noted that Helms testified as to the condition of the lightning arrester, which condition existed more than 15 months after Killoren Elec. Co. had surrendered all control over the transformer and lightning arrester. Helms' statement as to conditions that existed in 1944 raises no presumption that those same conditions existed in 1943. In *S. W. Gas & Elec. Co.* v. *May,* 190 Ark. 279, 78 S. W. 2d 387, a witness named Cunningham testified as to the condition of the electric wires two or three months after an injury occurred. Of that testimony, this court said:

''There was no evidence to show that the condition of the wires when observed by Cunningham was the same as when appellee's accident occurred. This testimony was therefore incompetent. *L. R. & F. S. R. Co.* v. *Eubanks,* 48 Ark. 460, 3 S. W. 808, 3 A. S. R. 245; *St. L., I. M. & S. R. Co.* v. *Thurman,* 110 Ark. 188, 161 S. W. 1054.'' See, also, *B. L. F. & E.* v. *Cole,* 108 Ark. 527, 158 S. W. 153.

In 20 Am. Juris 208 the rule is stated:

"The presumption of the continued existence of . . . a state of things is prospective, and not retrospective. Such a presumption never runs backward; the law does not presume, from proof of the existence of present conditions or facts, that the same facts or conditions had existed for any length of time previously."

So, the evidence of Helms as to the condition of the transformer and lightning arrester in 1944 is no evidence as to its condition on March 17, 1943, when Killoren Elec. Co. surrendered all control to the Ark. Valley Elec. Co-op.

(b) The plaintiff was asked this question, and answered as follows:

"Q. Would you say, as far as you know, the transformer there on the pole on the day you got injured was in the same condition it was when left there by the Killoren Electric Company A. Yes, sir."

The above question and answer were neither preceded, nor followed, by any evidence showing any examination that Hon ever made—prior to his injury—of the transformer and lightning arrester. In fact, there was no evidence that he had ever noticed these articles prior to his injury. So, the quoted question and answer do not constitute any substantial evidence going to show that a portion of the lightning arrester was actually omitted from the transformer at the time Killoren Elec. Co. surrendered all control of the line to the Ark. Valley Elec. Co-op. in March, 1943. This is true, because: (1) the witness did not so testify; (2) his knowledge of the transformer and lightning arrester was not shown; (3) his sufficient and continued observation of the pole and transformer was not shown. In the question, there appear the words, "as far as you now." These words were discussed in the case of *Wells* v. *Shipp*, 1 Miss. 353. In that case a witness had testified that "as far as he knew" certain property belonged to the plaintiff. With the quoted words in the answer, the Mississippi Supreme Court said of the testimony of the witness: "This proves

no fact negatively or affirmatively, and was wholly immaterial and, . . . properly rejected by the court.''

The answer of Hon that, *"as far as he knew,"* the transformer and lightning arrester were in the same condition when he was hurt as when left by Killoren Elec. Co. was not a mere qualifying of his testimony with such words as ''I think'' or ''I believe'' to express indistinct observation or recollection (see annotation in 4 A. L. R. 979); but was a distinct limitation on the source and extent of his knowledge and amounted to no evidence on the point at issue. Any person, if asked the same question, could—in all truth—have made the same answer as Hon made, and still have known nothing whatever about the conditions of the transformer and lightning arrester in March, 1943. In short, the question and answer did not rise to the level of evidence.

Aside from these items (a) and (b) as just discussed, the record is devoid of any attempt to prove that the Killoren Elec. Co. was negligent in the installation of the transformer and lightning arrester. These items (a) and (b), for the reasons we have shown, do not constitute evidence of any such negligence; so no negligence was shown. Since the plaintiff's case is dependent on proving that the defendant was guilty of negligence in the installation, and since no such evidence is in the record, it follows that the verdict of the jury is without evidence to support it. Therefore the judgment of the circuit court is reversed, and the cause dismissed.